```
1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF OREGON

3   CENTER FOR BIOLOGICAL        )
    DIVERSITY,                   )
4                                )
             Plaintiff,          )  Case No. 3:18-cv-00359-MO
5                                )
        v.                       )
6                                )
    U.S. DEPARTMENT OF THE       )  June 10, 2019
7   INTERIOR, et al.,            )
                                 )
8            Defendants.         )  Portland, Oregon
    _____)
9

10

11

12

13

14

15                       Oral Argument

16              TRANSCRIPT OF PROCEEDINGS

17       BEFORE THE HONORABLE MICHAEL W. MOSMAN

18      UNITED STATES DISTRICT COURT CHIEF JUDGE

19

20

21

22

23

24

25
```

APPEARANCES


FOR THE PLAINTIFF:        Mr. Eric R. Glitzenstein
                          Meyer Glitzenstein & Eubanks LLP
                          4115 Wisconsin Avenue, N.W., Suite 210
                          Washington, D.C. 20016


FOR THE DEFENDANTS:       Mr. H. Hubert Yang
                          U.S. Department of Justice
                          Wildlife & Marine Resources Section
                          601 D Street, N.W., Third Floor
                          Washington, D.C. 20004


FOR THE INTERVENOR
DEFENDANT:                Mr. Aaron E. Bruner
                          Ms. Caroline Lobdell
                          Western Resources Legal Center
                          9220 S.W. Barbur Blvd., Suite 327
                          Portland, OR 97219


ALSO PRESENT:             Mr. Noah Greenwald




COURT REPORTER:           Bonita J. Shumway, CSR, RMR, CRR
                          United States District Courthouse
                          1000 S.W. Third Ave., Room 301
                          Portland, OR  97204
                          (503) 326-8188

1          (P R O C E E D I N G S)

2          (June 10, 2019; 1:09 p.m.)

3          THE CLERK:  Your Honor, this is the time and place

4   set for oral argument in Case No. 3:18-cv-359-MO, Center for

5   Biological Diversity v. United States Department of Interior,

6   et al.

7          Counsel, can you introduce yourself for the record.

8          MR. GLITZENSTEIN:  Good afternoon, Your Honor.  Eric

9   Glitzenstein on behalf of the plaintiff.  And with me at

10  counsel table is Noah Greenwald, who is the science director

11  for the Center for Biological Diversity.

12         THE COURT:  Welcome.  Is your microphone on?

13         MR. GLITZENSTEIN:  Yes, it is, Your Honor.

14         THE COURT:  Thank you.

15         MR. YANG:  Good afternoon, Your Honor.  Hubert Yang,

16  counsel for the government.

17         MR. BRUNER:  Good afternoon, Your Honor.  Aaron

18  Bruner, counsel for defendant intervenors, and this is Caroline

19  Lobdell, co-counsel.

20         MS. LOBDELL:  Good afternoon, Your Honor.

21         THE COURT:  Thank you.

22         Thank you all for being here and for your helpful

23  briefing in this case.  I'd like to lay out my tentative

24  thoughts and let that be sort of a framework for oral argument

25  today.  And when I'm done, I'll start with the Center for

1    Biological Diversity to respond to some of these thoughts.

2         So I'm going to -- I think what I'll do is lay out my

3    thoughts on the listing before I get to the 4(d) rule, and

4    we'll take those in two separate pieces.

5         So there are a couple of arguments made by what I'll

6    call CBD with regard to the listing.  The first, I'll say, is

7    an argument that the rationale itself suffers from rational and

8    perhaps even -- I don't mean this negatively, but semantic

9    inconsistencies, things that just can't be said that way and

10   still be reasonable.

11        And so the first of those arguments focuses on the

12   description of the Willamette Valley population as stable but

13   declining.  And so my own tentative view, consistent with the

14   answer to that argument raised by the Interior, is that that's

15   a somewhat chopped description of the actual explanation, which

16   is that it's in long-term decline but near-term stability,

17   particularly focusing on the ODFW data.

18        The second argument -- and again, I should back up

19   and say that we're going to look at this in two pieces because

20   there are two pathways under the ESA for this decision to list

21   as threatened instead of endangered to be successful for

22   plaintiff.  One is to show that it's in danger of extinction

23   throughout all of the range, and the other is that it's in

24   danger of extinction or is in danger in a significant part of

25   the range, so those two separate arguments, and the first one

1  has -- that is, throughout all the range -- has two arguments

2  in that subpart.

3         The first, as I've said, is that there are these

4  linguistic inconsistencies.  One is the one we just talked

5  about, and the other is the idea that it's arbitrary and

6  capricious to treat, as the Forest Service does, the threat of

7  stochastic events to the Willamette Valley population.  And the

8  answer to that, as I understand it, is that it's something the

9  Fish and Wildlife Service -- I think I said Forest Service a

10  moment ago -- the Fish and Wildlife Service did take a hard

11  look at.  It views them as non-imminent.  I'm not sure how one

12  knows that, but it's viewed as non-imminent and was taken into

13  account in the reasoning provided here.  So that's argument

14  number one on sort of the first half of this statutory analysis

15  with two subparts.

16         The next argument on this same idea is that there's a

17  failure here to use the best available science.  And that

18  focuses on the use by plaintiff of BBS data, and the argument

19  that that is better data than the survey data relied upon by

20  Fish and Wildlife Service.

21         Remember here that the argument isn't who has got the

22  best data in some abstract sense, but whether the Fish and

23  Wildlife Service analyzed whether this was data that should be

24  relied upon as the best data or a method that should be relied

25  on as the best science available or not.  And here the record

1    has a careful look at the BBS data by Dr. Sauer -- by the

2    agency, in fact, in terms of saying, well, this is something we

3    should look at, and an explanation as to why it should be

4    discounted.  And that would normally satisfy the requirement

5    that the agency take a look at other scientific methods

6    employed for answering the pertinent question, and explain in

7    rational terms why it didn't rely on it in whole or in part.

8         Plaintiff here, I think, takes it a step further and

9    says that, in fact, it's not that the agency took no look at

10   this data, but it took in some ways too hard a look.  And I

11   think the argument, if I understand it correctly, is almost

12   that it demonstrates a determination by the agency to find a

13   way to discount the data.

14        I'm not sure what to make of that argument, in that I

15   think I accept that at some superficial level the agency took a

16   hard look at this other method for determining population and

17   rationally discounted it, and so whether someone took too hard

18   a look, that's what I want to hear more about at oral argument.

19   I'll call that prong one of the statutory analysis.

20        The second prong focuses not on all the range or

21   throughout the range, but on whether the species is in danger

22   of extinction or, I'll just say, in danger in a significant

23   portion of its range.  And here it gets a little bit tricky on

24   our record.  So that really has two prongs to it:  is the

25   species in danger of extinction, part one; and part two, in a

1   significant portion of the range.  So risk and significance,

2   you might think of it in those two ways.

3           Plaintiff's argument is that in terms of determining

4   significance, which is a term of art not defined in the

5   Endangered Species Act, the agency drafted a rule to sort of

6   define "significance."  And that rule has been subject to some

7   criticism, including by district courts in the Ninth Circuit.

8   The core of the criticism, cutting to the chase here a little,

9   is that to give the term "significance" the meaning that it's

10  given in the draft rule would eliminate the need for the term

11  "significance" in the statute itself.

12          So the first question for me is, particularly

13  focusing on the rationale of the in-circuit district court

14  cases on this point, do I agree with that reasoning.  And,

15  again, we'll hold oral argument and I'll hear you out, but my

16  tentative view is yes, I tend to agree with the reasoning that

17  would make the draft rule an improper method for determining

18  significance.

19          So with that in mind, the Fish and Wildlife Service's

20  core argument punts on that question and turns instead to the

21  question of endangerment and says that the Fish and Wildlife

22  Service in this case determined that in this portion of the

23  range, southern Washington and the lower Columbia, that the

24  species was not in danger of extinction.

25          So if that holds up, it certainly does make it

1   unnecessary to decide whether the agency adequately determined

2   significance.  That wouldn't matter if there was no danger of

3   extinction in whatever portion of the range is being discussed.

4           Here, on the briefing, the argument turns out to be

5   something about the nature of the record here.  So I guess in

6   two parts, first plaintiff says, well, that doesn't make sense

7   analytically.  It doesn't make sense because if you determined

8   that there was no danger of extinction, then you, the agency,

9   would have no need to go on to the question of significance, so

10  why would you?  You did do that.  Why would you do that if you

11  answered a predicate question about danger of extinction?

12  You'd stop there.

13          I think the agency's answer on the briefing is, well,

14  we were just being thorough.  I'm not sure how persuasive that

15  is.  I'll be interested in hearing more about that at oral

16  argument.

17          The second is more record driven, and that is that

18  the plaintiffs point to the draft analysis, in which there

19  is -- or at least there's a claim that there is a finding of

20  danger of extinction, and that that explains that the analysis

21  did go the way plaintiffs claim it went, which is to first find

22  danger of extinction and then not find significance.

23          And the Fish and Wildlife Service's answer to that on

24  the record is in two parts:  one, that plaintiffs are referring

25  to a draft analysis occurring about 18 months prior to the

1    final analysis, and that the landscape -- that is, the

2    informational landscape -- changed in those 18 months, such

3    that they were able to come to a different conclusion 18 months

4    later.  And, in particular, they cite to an altered analysis of

5    sort of the predicted rate of decline.

6           So I will have, when we get to that point, two

7    questions, among others, for the agency, and that is, one,

8    since that altered analysis of the predicted rate of decline

9    was furnished, I'll say, one month prior to the draft analysis,

10   then how can you explain to me on this record that that's

11   information that wasn't known at the time of the draft analysis

12   and only became known to the agency later, and can fairly be

13   included in this idea that we had a draft analysis, things

14   changed, we learned more information, so the final analysis

15   came out differently.

16          And the second question is really just a follow-on to

17   that, is what else do you have between the draft analysis and

18   18 months later with the final analysis that justifies on our

19   record this idea that whatever you said in the draft analysis

20   isn't what you concluded in the final analysis.

21          Then I'll have a third question on this same point

22   for the agency, and that is your final analysis description

23   doesn't actually utter the words "endangered" or "in danger of

24   extinction," but it comes perilously close.  How do you justify

25   the actual language used in the final analysis as supporting

1  threatened but not requiring a finding of endangered?  And I

2  think that gets us to the end of that first section.

3              So I'll start with CBD.

4              MR. GLITZENSTEIN:  Is your preference that I speak

5  from the podium?

6              THE COURT:  If you're not going to use the podium at

7  all, then just stay seated in your chair there.

8              MR. GLITZENSTEIN:  Thank you, Your Honor.

9              I appreciate that thorough blueprint and

10 recapitulation of the positions of the parties, and with the

11 Court's permission, what I prefer to do is start with the

12 significant portion of the range issue first and then go to the

13 alternative prong that Your Honor articulated with respect to

14 whether the species is at -- is endangered in all of its range,

15 because I think as Your Honor laid it out -- and plaintiff

16 recognizes that the significant portion of the range issue I

17 think does raise a more straightforward legal issue, not to say

18 that we don't believe that there is strong arguments on the

19 alternative prong for listing, but we also recognize that if

20 the Court has before it a more straightforward matter of

21 statutory interpretation, that may lend itself to a ruling that

22 may or may not make it unnecessary to reach some of the other

23 issues before the Court.

24             THE COURT:  Let's start then with the proposition

25 that I accept the idea that the draft definition for

1    significance is flawed, that I agree with other district courts

2    who have come to that conclusion, all right?  If we start with

3    that, then for the -- for your opponent, the only thing left is

4    to turn to risk, right?  That takes -- if your method of

5    analyzing significance is flawed, then that leaves them only

6    one avenue open, right?

7              MR. GLITZENSTEIN:  That's correct, Your Honor.  And

8    if I could give you a couple reasons why the argument that

9    they've made, and as Your Honor articulated, that I think what

10   they're suggesting was it was simply an academic exercise that

11   they put in their definition of "significance" in the part of

12   the final decision, which is specifically relating to the

13   significant portion of the range.

14             I believe that if you actually look at how they

15   constructed their argument, it would be very difficult to

16   actually come to that conclusion, and I think that the best way

17   to do this is by actually turning to, which I'll -- for

18   purposes of the Court, this is Administrative Record pages 631

19   through 632, which is where the significant portion of the

20   range discussion is.

21             There was one point I wanted to sort of highlight

22   that I think is very useful, specifically in terms of Your

23   Honor's point going to why did you include this in your final

24   decision if it was not relevant or necessary to the decision,

25   which I think is also sort of a recharacterization of their

1   harmless error argument, that, well, we put in this test, we're

2   not defending it, other courts have found it to be unlawful,

3   but nonetheless, you could ignore that here because it was

4   really not of critical or dispositive importance to our

5   decision.

6           I think that one interesting point about that, Your

7   Honor, if you look at -- and I just raise this because it was

8   something that I think goes directly to what you said, which I

9   think helps refute that interpretation of the rule.  Before you

10  even get to the significant portion of the range discussion,

11  they have a discussion of another alternative basis for

12  listing, which is called the distinct population segment

13  rationale, and I think there's some allusion to this in the

14  briefs.  This would be by way of potentially listing a

15  component of a species but not the entire species or subspecies

16  in this case.

17          If you look at how they dealt with the distinct

18  population segment issue, which is somewhat analogous to the

19  significant portion of the range analysis, but somewhat

20  different, it looks at significance of proportion but then also

21  has this requirement for discreteness unless the significant

22  portion of the range rationale for listing a population has to

23  be entirely discrete.  So hypothetically they would have to

24  look at the Washington portion of the range and say that is

25  genetically or geographically distinct.

1          If you look at how they analyzed that DPS issue, they
2    basically said we've decided there is no discrete population.
3    So if you look at page 631, or just note 631, they say, "Under
4    our DPS policy, a population must be discrete and significant
5    to qualify as a DPS.  Since we have determined that no
6    populations of streaked horned larks are discrete, we will not
7    consider whether the population segment is significant."
8          That stands in stark contrast to this -- the ensuing
9    analysis of the significant portion of the range issue, where
10   they went through a specific determination as to whether the
11   Washington portion of the range is significant.
12         And the point I'm making is, among other arguments
13   we're making, that completely undermines any notion that they
14   would include a significance analysis in the -- if I could use
15   the acronym SPR part of the analysis simply as an academic or
16   theoretical exercise.  Not only is that not something that
17   agencies generally do, I think as Your Honor may observe from
18   looking at administrative law cases, where agencies rarely just
19   include some analysis that has nothing to do with the decision
20   they have to make, but here we have a situation where we're in
21   a directly analogous situation because they said this one is
22   not discrete, we don't even have to look at significance.  They
23   didn't bother to.  But in the --
24         THE COURT:  Could I pause you there for just a
25   moment.

```
 1              So the record cite is a helpful piece of argument
 2   because the problem that your argument faces, for me at least,
 3   is that it rests on this idea that agencies would not typically
 4   engage in this second step of an analysis if the first step
 5   makes it unnecessary.  And as a point of fact, I don't know one
 6   way or the other whether that's true or not.  I mean, I may
 7   have some experience, but it's limited to a nonscientific
 8   sample, and your experience is probably also so limited, if
 9   you're just going by your own experience.
10              So, I mean, it is curious you'd say -- well, based on
11   what would we conclude that agencies don't do that?
12              MR. GLITZENSTEIN:  Well, I don't want to sort of ask
13   the Court to take some judicial notice of that, but what I am
14   saying is in this --
15              THE COURT:  I guess I'm answering your question that
16   if you did ask me, I'd say no because I don't have enough to go
17   on.
18              MR. GLITZENSTEIN:  I appreciate that, Your Honor.  I
19   guess the point I was trying to make in this particular case is
20   that here we have an analogous situation where the agency
21   itself, this agency in this particular role said that we don't
22   have to apply the further step because we have decided that it
23   doesn't have to be reached.
24              THE COURT:  Right.  Which I said a moment ago was a
25   helpful argument and I appreciate it.  It is helpful, but I'm
```

1    asking about the argument you actually briefed, which is that

2    agencies just don't do this, they wouldn't behave this way.

3            And my question for you is how do I know that?

4            MR. GLITZENSTEIN:  Well, I do think, Your Honor, that

5    there's precedent which is helpful on that point.  And that is

6    the prejudicial or harmless error cases that we cite,

7    particularly *Gifford Pinchot*, which is an Endangered Species

8    Act case, where the Ninth Circuit has instructed that where an

9    agency has made an error of some kind in its decision-making

10   process -- and here we have what I think is tantamount to a

11   confessed error -- that the agency has a heavy burden of

12   establishing that that -- if it appears to have relied upon

13   that for making its decision, it's difficult for a court to

14   look at that and conclude as a general matter of analysis that

15   that was irrelevant to the agency's decision.  So I think if

16   you put this within the box of the prejudicial harmless error

17   case law, I think it helps support that proposition, but --

18           THE COURT:  If I could pause you there before you

19   move on.

20           Actually, isn't the opposite the case?  I mean, if

21   you're gunning for the possibility of harmless error as an

22   agency, then you need a non-error to fall back on.  So if you

23   just have one shot at the issue and you get it wrong and you

24   haven't moved on to the next step of the analysis -- I

25   shouldn't even say "next step."  To an independent second step

1    of the analysis, then you got nothing to fall back on if you're

2    found to be in error.  It would make sense in that world for an

3    agency, if it has two independent prongs for reaching a

4    decision, to decide both of them in case one is wrong.

5           MR. GLITZENSTEIN:  Well, I think an agency certainly

6    could do that.  I think the examples of the cases where the

7    Ninth Circuit has found harmless error have generally been

8    cases where it was absolutely clear on the record that the

9    independent basis was sufficient to support the agency's

10   decision.  And I do think that --

11          THE COURT:  Right.  And you get no chance at that

12   going your way if you're the agency if you don't even make the

13   decision.  It's hard to get the Ninth Circuit to agree that

14   your otherwise independent ground was supported and an adequate

15   basis for your decision, but it's impossible if you don't go

16   that far, right?

17          MR. GLITZENSTEIN:  I agree with that, Your Honor.  If

18   an agency says, and the record reflects, here are several

19   independent grounds for our decision, any one of which would be

20   sufficient to support the conclusion, then --

21          THE COURT:  I guess I hear the voice of my father

22   reminding me that you've missed 100 percent of the shots you

23   don't take.

24          MR. GLITZENSTEIN:  I appreciate it.  As a basketball

25   fan, I appreciate the analogy, Your Honor.

1          Here again, I think the most crucial point is that I
2     think in this particular case there are two fundamental
3     record-based problems with the agency's --
4          THE COURT:  One is the one you mentioned a moment
5     ago, right?
6          MR. GLITZENSTEIN:  That's one, and I think actually
7     in addition to that one, I think there are two others.
8          The second is if you read this significant portion of
9     range discussion in its entirety, my argument I think is that
10    it is really impossible to read it in anything other than the
11    significance part of the analysis was critical to the agency's
12    decision.
13         The way they lay it out is they explain that we have
14    this approach to defining significance, in which we look at
15    whether or not there are separate portions of a range that can
16    be broken down in some fashion, then we look at whether or not
17    threats are more concentrated in one part than in another part,
18    and if they are, then we decide whether the part where
19    the threat is concentrated is a significant portion.
20         So applying that analysis, Your Honor, they then
21    basically have it broken down so they first talk about the
22    Washington portion of the range, which they set out in what I
23    think Your Honor appropriately referred to as rather dire
24    terms, talking about declines of 40 percent over a short period
25    of time.  Again, the Washington portion has been reduced to

1    about 300 total birds in the two places they consider to be the

2    Washington portion of the range.  They talk about 40 percent

3    declines.  They talk about the fact that the species is well

4    likely to become extirpated within 25 years, according to the

5    data.  And one of the arguments the government makes on this

6    point is, oh, they're just citing some studies, they're not

7    saying what their conclusion is.  But it's clear, and I think I

8    can refer to other parts of the record where they're clearly

9    describing what they believe the record shows about the rather

10   dire state.

11           Then they go on to the Willamette Valley portion, and

12   they say the Willamette Valley portion -- and however you

13   characterize this from a witnessing standpoint -- is referred

14   to as being more stable.  So they have these two populations

15   set out in this kind of seriatim way, and then they conclude

16   with the paragraph which applies the significance test.  What

17   they say is, "Having already determined that the streaked

18   horned lark is threatened throughout its range, we considered

19   whether threats may be so concentrated in some portion of its

20   range" --

21           THE COURT:  Can you slow down while you're reading.

22           MR. GLITZENSTEIN:  I'm sorry, Your Honor.

23           -- "that if that portion were lost, the entire

24   subspecies would be in danger of extinction.  In applying this

25   test, we determined that even with the potential loss of the

1   Washington populations, the relevantly larger population in the

2   Willamette Valley of Oregon would likely persist, therefore the

3   subspecies as a whole is not presently in danger of

4   extinction."

5           I believe if you apply normal analytical and

6   linguistic analysis to that, it's clearly saying as close as

7   one can reasonably be expecting the agency to say, we are

8   applying the significance test, the now discredited and not

9   supported significance test to determine that because the

10  Willamette Valley population persistence would not render the

11  entire species at risk of extinction, and therefore we decide

12  that the species is not in danger to the significant portion,

13  i.e. the Washington portion.  I think that's just clearly what

14  the agency is saying.

15          THE COURT:  I understand that argument.

16          And then your third one is the one about the language

17  of the draft analysis, right?

18          MR. GLITZENSTEIN:  Well, we have the draft analysis,

19  but what I also ask Your Honor to look at are some other

20  portions of the final decision itself.  And if I could just --

21  because the government in its reply brief, I think it's fair to

22  characterize this as an effort by government counsel, I'd say a

23  Herculean effort to cast the rule in a way that is not

24  supported by what the rule says.  In language of administrative

25  law parlance, a post hoc rationalization.  They admit there's

1    no place in the Final Rule where they said the Washington

2    portion is threatened rather than endangered, but there are

3    places where it's about as clear as it could be that they are

4    determining the Washington portion faced imminent risk of

5    extinction.

6            So, for example, AR-592, which is in the Final Rule,

7    they say again on the Washington coast and Columbia River

8    islands, there are about 120 to 140 breeding larks.

9    Populations at these sites appear to be declining by about

10   40 percent per year.

11           Page 601, in response to a comment specifically.

12   about the status of the Washington population, they say, "We do

13   not consider the subspecies in its entirety to be in danger of

14   extinction at this time as we anticipate the persistence of the

15   lark in some portions of its range.  We considered whether the

16   Washington population of the lark may constitute a distinct

17   population segment or a significant portion of the range.  We

18   concluded that the Washington portion does not constitute a

19   valid DPS, and furthermore that the Washington population does

20   not represent a significant portion of the range of the

21   subspecies."  Not that we do not believe the Washington portion

22   is endangered.

23           Page 615 of the Administrative Record of the Final

24   Rule --

25           THE COURT:  I'm familiar with that.

1    MR. GLITZENSTEIN:  So, Your Honor, I don't mean to
2  belabor the point, but I do believe that Your Honor's
3  characterization of the Final Rule as certainly strongly
4  suggesting a determination of endangered status in -- at page
5  623 they refer to the population could become extirpated in the
6  near future in the Washington portion.  So we believe that any
7  suggestion that this was simply not necessary to their
8  conclusion is simply not supportable by the final decision
9  itself or the other tools that the Court might use to determine
10  whether or not the species should be listed on that basis.
11    THE COURT:  So to recap, to make sure I understand
12  your argument, you're really making two arguments, then.  One
13  is the one we discussed; that is, faced with the idea that the
14  agency now says -- this is your argument -- that they really
15  only determined that the species was only threatened and
16  therefore did not have to determine significant, you point to
17  several reasons why that's, in your view, as a factual matter
18  not what the agency actually did.  One is the sort of abstract
19  argument that that's not what an agency in this situation would
20  do, and the other involves three or maybe four record cites to
21  show that that's not supported in this record as an accurate
22  portrayal of what this agency did in this decision-making
23  process.
24    The second argument you make is that the record
25  doesn't really adequately, I guess, in your view, even support

1    the punch line; that is, the agency's argument here depends on

2    them saying threatened not endangered, and you're saying that

3    the record doesn't even really support the agency ever really

4    saying that in any accurate and meaningful way, right?

5         MR. GLITZENSTEIN:  That's correct, Your Honor.

6         THE COURT:  Thank you.

7         Your response?

8         MR. YANG:  Good afternoon, Your Honor.

9         If I may, with regards to the first point on the DPS

10   policy that was raised, counsel has pointed to the example of

11   DPS policy and the services analysis under the DPS policy.

12        THE COURT:  I'm going to pause you there for a

13   moment.

14        MR. YANG:  I'm sorry.

15        THE COURT:  So you've moved from a microphone that is

16   working to one that isn't working.  Let's see if we can fix

17   that.  You don't need to do anything.  Just hang tight for a

18   second.

19        (There is a pause in the proceedings.)

20        THE COURT:  Actually, let me just ask you to go ahead

21   and take your seat, then we'll all be able to hear you better

22   if you do.

23        MR. YANG:  Certainly.

24        THE COURT:  Go ahead.

25        MR. YANG:  Your Honor, with regard to that analogy,

1    I'd suggest that there are some limitations how far you can

2    extend that analogy.  And so to your question with regards to

3    whether the service has, in fact, taken that sort of approach

4    before, certainly it may not be the most fashion-forward

5    approach, but there's nothing that precludes the agency from

6    taking a belt-and-suspenders approach, as it did here.

7            In our briefing, for example, we have cited a case on

8    page -- in our reply brief, *Center for Biological Diversity v.*

9    *Jewell*.  The citation is 2014 Westlaw 5703029.  And that is

10   also a case that involved the application of the DPS policy,

11   and in that case the service made a negative finding as to

12   discreteness, and also made a negative finding as to

13   significance.  Notwithstanding that fact, it still continued

14   and -- with this belt-and-suspenders approach and --

15           THE COURT:  Let me start by giving you that point, at

16   least for argument purposes, that an agency could do both and

17   that I don't know on this record whether there's some sort of

18   custom or practice that makes it unlikely that you did do both

19   here.  Let's just assume that you could do both.

20           So the real question becomes then factual, based on

21   this record, is that what you actually did here, is that what

22   your client did here.  And you heard the three or four

23   citations to the record suggesting that it's not what you did

24   here.  What's your response to that?

25           MR. YANG:  Your Honor, I think a plain language

1    reading of the SPR analysis compels the conclusion that the
2    focus of the agency was on the status prong and not on the
3    significance prong.  For example, if we take a look at the
4    Final Rule and the SPR analysis, you'll see that almost the
5    entirety of the analysis is focused on the status prong.  The
6    two sentences, the totality of the analysis on the significance
7    prong is two sentences, which again we believe underscores the
8    notion that the service, out of an abundance of caution,
9    addressed the second prong, but it wasn't required to do so
10   because it had already made the threatened finding on the
11   status prong.
12           THE COURT:  And that's in the final analysis?
13           MR. YANG:  It is, Your Honor.
14           THE COURT:  What do you make of the idea that in the
15   draft analysis it came out differently?
16           MR. YANG:  Certainly, Your Honor.  If I may as well,
17   too, before leaving this point, I should also point out we've
18   made the argument in our briefing that we also believe the
19   plain language reading of the one particular sentence in the
20   analysis that really seems to be the crux of the dispute also
21   compels the conclusion that we made a threatened finding.
22           So the terms are cast in a forward-looking sense,
23   likely to become extinct within the foreseeable future.  So we
24   believe that's another point that weighs in favor of the
25   conclusion that the agency made, in fact, to make a decision

1   based primarily on the status prong.  And, again, I will, in a

2   surfeit of caution, address the status prong as well.

3          To your question regarding the draft --

4          THE COURT:  So I want to make sure I understand.

5   You're also arguing then that you did, in fact -- your client

6   did, in fact, recite appropriate language for finding the

7   species threatened and not endangered, because you are facing

8   the argument that the analysis on the status prong, certainly

9   several sentences of it sound like a description of an

10  endangered species.

11         MR. YANG:  We'd suggest, Your Honor, that the

12  opposite is true.  If I may.

13         You know, for example, the service was careful to

14  explain that the Washington population was only likely to

15  continue trending towards extinction, and that that risk wasn't

16  imminent but rather would occur within the century.  These are

17  the sort of forward-looking terms that we're referring to,

18  which in our view speak to a future risk rather than a present

19  risk.

20         So we believe that the plain language reading of the

21  sentence actually compels the conclusion that this was a

22  threatened status finding.

23         THE COURT:  Thank you.

24         So one of your arguments is that to the argument that

25  you came out differently in the draft than the final and its

1    corollary, that that indicates that you really analyzed

2    significance on its own and not just as some add on.  You

3    respond that the landscape changed in the 18 months between the

4    draft and the final.

5            First, do you agree that the draft analysis comes out

6    differently than the final analysis?

7            MR. YANG:  Your Honor --

8            THE COURT:  On the question of status.

9            MR. YANG:  We'd certainly agree that the draft,

10   insofar as it goes, does suggest a different outcome, but I

11   would attach several caveats to that.

12           THE COURT:  Before we get to the caveats, what you

13   want to make of that is that there's a reason why it came out

14   differently in the final, and that is that the agency learned

15   things it did not know when it issued the draft analysis,

16   right?

17           MR. YANG:  That's correct, Your Honor.

18           THE COURT:  What are those things?

19           MR. YANG:  So, if I may, you refer to the Pearson

20   study, and Scott Pearson's acknowledgment prior to this draft

21   telling you that, in fact, the data from the Pearson study, as

22   well as two additional studies, may not be representative of

23   current conditions.

24           So in that same email, which appears at SHL-26117 and

25   26118, Dr. Pearson points out that while the population has

1    declined on certain sites, it's actually increased on others,

2    which in his view may reflect the movement of birds from Damon

3    and Midway/Grayland to Leadbetter and not just a population

4    decline.

5           So there was, Your Honor, some question about what

6    this meant.

7           THE COURT:  Let's start with that email, then.

8    That's issued, if I remember correctly, a month prior to the

9    draft analysis?

10          MR. YANG:  Roughly a month before the draft analysis.

11          THE COURT:  So, again, sort of post hoc ergo propter

12   hoc, how do you get from a month prior to the draft analysis

13   being an email that is new information postdating the draft

14   analysis?

15          MR. YANG:  Well, Your Honor, I think this is where we

16   get to the point of discussing the caveat.  So this draft

17   finding wasn't meant to encapsulate the totality of the

18   agency's knowledge at that point in time.  Rather, as the

19   transmittal email itself clearly said, it was really an effort

20   to, in the language of the author, dump a raw --

21          THE COURT:  Your argument depends upon new

22   information being learned by the agency after the draft

23   analysis, right?

24          MR. YANG:  That's correct, Your Honor.

25          THE COURT:  So is this email, which was issued a

1   month prior to the draft analysis, something you contend

2   qualifies as new information not taken into account in the

3   draft analysis?

4          MR. YANG:  Your Honor, I think, if I'm understanding

5   you correctly, Dr. Pearson raised the issue a month prior to

6   the draft finding.  The service requires time to collect the

7   information, to suss out then whether this, in fact, was

8   correct or not, whether that 40 percent decline rate was, in

9   fact, accurate, or whether it may reflect something else; for

10  example, the movement from one site to the other.

11         THE COURT:  The agency, when it issued its draft

12  analysis, knew of this email but felt like it hadn't had an

13  opportunity to do its due diligence?

14         MR. YANG:  It was aware of the email.  It did predate

15  this.  But again --

16         THE COURT:  Let's stick with it for a minute before

17  you move on.

18         So it knew of the email but felt it had to do

19  something more to, as you say, suss out its significance,

20  right?

21         MR. YANG:  That's correct, Your Honor, right.

22         THE COURT:  So what did the agency on this record do

23  following the draft and before the final to suss out the

24  significance of this email?

25         MR. YANG:  Well, it examined the survey data from

1    ODFW from 2008 to 2012.  It examined the monitoring data for

2    the very large population centers in the Willamette Valley.  So

3    there were data points that the agency was aware of but hadn't

4    yet fully considered until it had that moment to do so.

5           This draft finding was really just meant to -- again,

6    it was not meant to encapsulate the totality of the agency's

7    knowledge at the time.  It was simply --

8           THE COURT:  No one has ever argued that it is

9    entitled to encapsulate the totality of the agency's knowledge

10   at the time.  So you don't have to knock that argument down.

11          I thought that when you said there were a number of

12   things that changed between the draft analysis and the final,

13   that you'd have a list of things that the agency learned in

14   that interim.

15          So it turns out this email, understandably, is not

16   one of them, right?  It's not something new that you learned in

17   that 18-month interregnum, right?

18          MR. YANG:  It predated the draft, so the service was

19   aware of it at the time they drafted the finding.

20          THE COURT:  So what did the agency acquire by way of

21   knowledge that's demonstrated on this record that it didn't

22   have when it issued the draft analysis, sufficient to change

23   its mind?

24          MR. YANG:  Your Honor, I would suggest it had a

25   chance to fully digest the information.  This was a -- again, I

1    believe at that point a raw piece of writing a month after it

2    received this email.  It did not yet have the full quantum of

3    information that it had after it had collected the information

4    and the data points from all the different --

5              THE COURT:  There's two things going on.  One is

6    acquiring the full quantum of information, and the other is

7    figuring out what the information says.

8              So the first is a gathering process.  Did the agency

9    gather any new information after the draft?

10             MR. YANG:  Yes, Your Honor.

11             THE COURT:  What?

12             MR. YANG:  You know, I don't know offhand what

13   specifically it was --

14             THE COURT:  But the main thing you want to say is

15   that the agency took that time to examine what it had acquired

16   to understand its significance, right?

17             MR. YANG:  Well, Your Honor, just to continue the

18   chronology, the proposed rule didn't come out until October of

19   2012, and that included the request for comments.  So forgive

20   me if I'm misunderstanding your question, but I just want to

21   make sure I'm clear as to the chronology.  The service then, in

22   October of 2012, asked for additional information, so --

23             THE COURT:  Right, I understand.  So this set of data

24   points is being used in an unusual way.  The argument is -- so

25   typically the agency has every right to examine things and

1    think about them between a draft and a final, and should and

2    does.  That's very common.

3         Here the argument is that you're saying as a point of

4    fact that the status decision was made in such a way as to make

5    unnecessary a decision about significance that you went on in a

6    belt-and-suspenders approach and did so anyway, but the fact

7    that that relied on a bad draft rule doesn't matter because

8    standing independent of all that is your status decision, and

9    that's your argument.

10        And the response to that is, well, there are some

11   data points that indicate that that's not the way this

12   happened, and one such data point is the fact that the draft

13   analysis comes out differently on status.

14        And your response to that is, well, it comes out

15   differently because we learned things in the interim.

16        So all I'm trying to get at is given that your

17   argument is that you learned things in the interim, you didn't

18   tell me in your brief what those things are.  Now I'm trying to

19   give you a chance to tell me what they are to support the idea

20   that you came out differently later, not as a cover but as a

21   bona fide change of mind.

22        MR. YANG:  I understand, Your Honor.  And perhaps

23   what I'm trying to inartfully explain is that after the draft

24   finding, the service was able to undertake a more extensive

25   review of this information of Pearson, of Camfield, of

1    Schapaugh, and it did so.  It did a deeper dive into this

2    information.

3          So I think your question suggests that perhaps the

4    service became aware of additional data points that might be

5    countervailing and such.  I think this shows in the SPR

6    analysis -- and I'm looking at SHL-00632 -- that in fact what

7    the agency had an opportunity to do after they proposed the

8    rule was take a deeper dive into this information.

9          THE COURT:  Right.  And I don't mean to suggest that

10   there's anything wrong with simply relying on the idea that you

11   use the period of time to assimilate what you've learned by way

12   of information.  I'm just trying to verify that there, in fact,

13   are no newly acquired data points in that 18-month period, it's

14   all about data previously acquired being better understood.

15         That's your position, right?

16         MR. YANG:  Yes, Your Honor.

17         THE COURT:  And when you say the landscape changed

18   between the draft and the final, you mean that the agency did a

19   deeper dive and came to, in its view, a better, clearer

20   understanding of what the data means?

21         MR. YANG:  Well, let me suggest, Your Honor, that

22   sometimes the dog that didn't bark is just as telling as the

23   dog that did, and the fact that in response to the proposed

24   rule, it asked for information and the information did not come

25   up during that review process that would suggest that the

1    Washington population was more imperiled.

2          THE COURT:  All right.  So there are a couple of

3    other factual reasons, factual arguments why -- or why

4    plaintiffs contend that the argument you've set up isn't how it

5    really happened here, and another one to pick up is this idea

6    that on a related analysis, when presented with the

7    opportunity, I suppose, to engage in a belt-and-suspenders

8    approach, the agency declined to even do so.

9          Why isn't that persuasive to the point that the

10   agency wouldn't have gone on to analyze significance if it made

11   the status finding it made here?

12         MR. YANG:  Your Honor, there's I think no dispute

13   that the agency certainly could have been a bit more

14   crystalline in its reasoning, and so there's no dispute from

15   our end that it could have taken a belt-and-suspenders approach

16   as to DPS, but it did not.  But that's certainly different than

17   saying we're somehow barred from doing that with regard to the

18   SPR policy.  We've already pointed out one case in which the

19   service has, in fact, taken a belt-and-suspenders approach to

20   the DPS policy, so there is at least some precedent for the

21   agency doing that.

22         With regards to the SPR policy itself, this was a

23   time during which that particular policy was very much in

24   development and underway.  So it was a draft policy succeeded

25   by a final policy, and so I think what you see here, Your

1    Honor, is an agency that is grappling with some very thorny

2    issues of policy and law.  And so in this instance, I think

3    that the chronology is important because it suggests that,

4    again, out of a surfeit of caution, the agency determined that

5    the most prudent course of action would be to address both.

6            THE COURT:  All right.  Thank you very much.

7            Any brief reply on this point before we move on to

8    Rule 4(d)?

9            MR. GLITZENSTEIN:  Yes, Your Honor.  Thank you for

10   the time.

11           Just a couple of points.  In terms of the email, even

12   putting aside the chronology, I think it's important to point

13   out that Pearson is with the Washington Department of Fish and

14   Wildlife.  They submitted comments on the draft policy, and if

15   you look at their technical comments -- and these are

16   Administrative Record 15585 through 586 -- there was no

17   suggestion whatsoever that the situation had improved somehow

18   in Washington.  In fact, they say things which are supportive

19   of the dire condition in Washington.

20           For example, on 15585, they say, "The summary should

21   cite importance of stochastic weather on small populations as

22   threats.  Both are significant threats that can drive

23   populations to extinction over very short periods."

24           On the next page they talk, as they -- as the

25   proposed rule did, about the dire problem with small

1  populations facing a genetic bottleneck and the low survival of

2  chicks for a very small population.

3        So if you look at that, which are the formal comments

4  submitted by the agency that Pearson worked for, it undercuts

5  that argument.

6        Secondly, if you look at the studies that were cited

7  in the Final Rule, Your Honor, not only is there no reference

8  to the situation improving in Washington, which would be

9  consistent with this reanalysis that government counsel is

10  suggesting, in fact the studies cited in the Final Rule

11  discussion of the SPR portion of the rule are the same studies

12  that were cited in the draft rule.  They're the studies showing

13  40 percent decline over a very short period of time for birds

14  reduced to 200, 300 animals in the population.

15        THE COURT:  Let me back up just a minute, then.  I

16  understand that point.  Let me back up just a bit.

17        So the agency has two independent grounds on which it

18  can make this decision, right, status or significance?  And

19  they don't need both, they just need one, correct, typically?

20        MR. GLITZENSTEIN:  Yes, Your Honor.

21        THE COURT:  They can either not make a finding on

22  significance, or they can make an incorrect finding on

23  significance if they're right about status.  It doesn't matter

24  in a typical case, right?

25        MR. GLITZENSTEIN:  Yes, Your Honor.

1       THE COURT:  And your argument here is that, well,

2   first of all, if we first give them for sake of argument the

3   idea that they have made a finding on status that's threatened

4   only, and if that's correct, then all of your arguments about

5   significance don't really matter, right?

6       MR. GLITZENSTEIN:  They don't matter for the SPR

7   portion of our argument, that's correct.

8       THE COURT:  So the reason you're suggesting that

9   that's -- that the way this played out was that the agency

10  first decided the question of status sort of in your favor, if

11  we can say that, and then went on to decide significance, the

12  goal that you have to have, the advocacy goal is to suggest

13  that anything later done by the agency to advance the idea that

14  these are two independent findings is a post hoc

15  rationalization for what's really happening here?

16      MR. GLITZENSTEIN:  That's exactly what it is, Your

17  Honor.  I give government counsel points for creativity, but I

18  don't think it's consistent with what they actually did.

19          And, again, if you look at that last paragraph I

20  quoted before, which government counsel has not responded to,

21  it says, "Therefore" -- after discussing the relative status of

22  the two portions of the range, "Therefore we conclude that we

23  do not need to list as endangered," and the "therefore" is the

24  crucial part of this case.  This was not a toss it.  This was

25  the conclusion for why it should not be listed as endangered

1    based upon a significant portion of the range.

2              Your Honor, I think the other point here that becomes

3    I hope clear from the exchanges that have occurred is that

4    there is no way, consistent with the case law, that at the very

5    least there should not be a remand for more coherent

6    explanation and decision making.  In *Gifford Pinchot*, the Ninth

7    Circuit said the following --

8              THE COURT:  I'm sorry, let me ask.  You said the very

9    least.  But isn't that also what you're asking for here?

10             MR. GLITZENSTEIN:  Yes, Your Honor.  I guess there's

11   two different kinds of remands.  So I apologize for being

12   unclear about that.  The basic relief is a remand.  I think

13   that a remand could obviously take the form of, on the one

14   hand, we don't understand what the government is saying, they

15   claim now they made a threatened finding, I don't see that in

16   this decision document, I remand for the agency to explain

17   better.

18             And then, of course, there's also a remand in which

19   the Court could go further than that -- which we think is

20   supported by the record -- that in so many words the agency

21   depicted this as an endangered population, which on its face

22   would support a conclusion that if it's significant, the

23   species has to be listed.

24             So all I was trying to suggest is there's remands

25   which ask for better explanation and there's remands which

1    obviously delve more into the record.  And all I was saying was

2    that under *Gifford Pinchot*, where the Court said you can only

3    invoke this rule of prejudicial or harmless error -- which is

4    what the government is asking the Court to do -- is when,

5    quote, a mistake of the administrative body is one that clearly

6    had no bearing on the procedure used or the substantive

7    decision reached.

8            My colleague specifically said that the agency's

9    analysis was not crystalline.  I would say that the discussion

10   today highlights that, on this record, the Court cannot

11   confidently, I respectfully submit, conclude that the

12   invocation of an illegal significance test clearly had no

13   bearing on the outcome of the agency's decision-making process.

14   And I believe if you apply that standard to the record, then

15   there has to be a remand for a further analysis on that issue.

16           THE COURT:  Thank you.

17           Mr. Kerin, will you let the parties know if I can get

18   shorter answers to these questions, we'll be about ten more

19   minutes?

20           MR. KERIN:  I will, Your Honor.  Thank you.

21           THE COURT:  Let's turn to 4(d).

22           So first, assume you're right about remand in one

23   form or another.  Does that necessarily -- what does that do to

24   Rule 4(d)?  Does it void Rule 4(d) and require it to be redone

25   when everything else is redone?  In this case there's really no

1    status quo ante to return to except nothing, right?  So in your

2    view, if you win on some form of remand, does that have a

3    necessary impact on your Rule 4(d) argument?

4              MR. GLITZENSTEIN:  Yes, Your Honor.  I think it

5    certainly counsels in favor of also remanding the 4(d) rule,

6    because the 4(d) rule is contingent upon there being a

7    threatened determination.

8              THE COURT:  You'd have to -- you, the agency, would

9    have to analyze it differently if the status were different?

10             MR. GLITZENSTEIN:  That's correct, Your Honor.

11             THE COURT:  And then if Rule 4(d) goes away in the

12   interim, then what?  What is the interim?  Nothing?

13             MR. GLITZENSTEIN:  Well, the interim from the 4(d)

14   standpoint would be that the normal protections of the act

15   would come into play, which does not mean that --

16             THE COURT:  Which those were in place before this

17   litigation even began, right?

18             MR. GLITZENSTEIN:  Well, not the protection of ESA.

19   We're asking the threatened listing be remanded but not vacated

20   so the species would continue to be listed as threatened.

21             THE COURT:  And with what -- if the rule, if the 4(d)

22   rule is voided, then with what specific protections?  Just

23   no -- let's just talk about the only one you challenged, no

24   agricultural exemption to the other protections from being

25   threatened.

1      MR. GLITZENSTEIN:  That's right, Your Honor.  The

2  baseline condition right now is that there's a general 4(d)

3  rule that the Fish and Wildlife Services uses as sort of the

4  baseline condition.  That is that normally a threatened species

5  gets the protections of an endangered species from take, the

6  take prohibition, except where a special rule has been adopted.

7      So if the 4(d) rule were vacated, then we would

8  simply return to the same situation that applies to most

9  threatened species, which is again the baseline conditions.

10 And that doesn't mean that all take would necessarily be

11 prohibited.  There are other mechanisms in the Endangered

12 Species Act, the ones that are usually used in order to allow

13 certain levels of take.

14      So, for example --

15      THE COURT:  That's all right.  Thank you.  I'm aware

16 of those.  Thank you.

17      MR. GLITZENSTEIN:  So that we believe that --

18      THE COURT:  That's all I want to hear.  Thank you

19 very much.

20      MR. GLITZENSTEIN:  Thank you, Your Honor.

21      THE COURT:  Same question, then.  Assume for a moment

22 then that this is remanded.  Then what happens to the 4(d) rule

23 in this case?

24      MR. YANG:  Your Honor, we believe the critical

25 wrinkle would be plaintiffs have requested as to the listing

1    decision, it would be remanded without waiver.  So the effect

2    then would be to leave the subspecies as threatened pending the

3    agency's final position on remand.

4            So, in our view, Your Honor, as we tried to

5    demonstrate in the briefing, the exemption of those

6    agricultural activities supports lark habitat, ultimately

7    provides a net conservation benefit to the subspecies.  So, in

8    our view, it would actually be prudent if the threatened

9    listing is -- remains in place during remand, that the 4(d)

10   rule also remain in place, again for the purpose of providing

11   that conservation benefit to the subspecies.

12           THE COURT:  Your response to that?

13           MR. GLITZENSTEIN:  Our response, Your Honor, is that

14   the agency specifically made a finding that the existing

15   protections in the Willamette Valley are inadequate to protect

16   the species.  As we spell out in our briefs, they listed the

17   species on that basis, and therefore keeping that 4(d) rule in

18   place with no protection for the species would actually be

19   contrary to the purposes of the act.  So while they're

20   revisiting listing, we believe they should also be revisiting

21   the 4(d) rule and rely on other mechanisms.

22           THE COURT:  The argument is not that they wouldn't

23   revisit the 4(d) rule, it's just that it wouldn't be vacated.

24   So they'd have to revisit it necessarily, but it would just --

25   it wouldn't be vacated in the interim.

1        MR. GLITZENSTEIN:  I think Your Honor has the

2   discretion to remand and not vacate the 4(d) rule, especially

3   if a court in this hypothetical were to put the agency on a

4   pretty fast track for a new decision.

5        Your Honor clearly has the discretion to do that.  We

6   believe the better course from the standpoint of the purposes

7   of the act would also be to vacate the 4(d) rule, because again

8   they found that -- they found in listing the species that the

9   Oregon state protections were inadequate to protect the

10  species, and that is what is -- essentially the 4(d) rule does.

11  It adds nothing to the existing state protections.

12       But we acknowledge that Your Honor would have the

13  discretion to only remand the 4(d) rule, but if Your Honor were

14  to do so, we think there should be some separate -- some

15  separate briefing or at least discussion about what the

16  schedule for a new decision would be so the lark is not

17  basically kept in an unprotected state indefinitely, especially

18  if the ultimate decision is going to be an endangered listing,

19  which would be a possible outcome.

20       THE COURT:  Thank you.

21       I appreciate, as I said at the outset -- and I mean

22  this sincerely -- the helpful briefing in this case.  This was

23  sort of above the norm in cases, not just environmental but

24  generally here.  So you're to be commended for that --

25       MR. GLITZENSTEIN:  Thank you, Your Honor.

1          THE COURT:  -- for the helpful oral argument here.

2          As I laid out at the outset, there are really these

3     two claims as ways in which the agency's actions are said to

4     have been arbitrary and capricious.  And as to the first one,

5     two subparts for throughout the range and a portion of the

6     range.

7          And we've sort of left to one side what I view as

8     plaintiff's weaker argument about throughout the range for its

9     stronger argument that the agency decision here was, in fact,

10    arbitrary and capricious, and in the decision it made regarding

11    risk and status -- excuse me, status and significance on a

12    significant portion of the range.

13         And that argument depends on something a little bit

14    unusual for a plaintiff to show, which is that while there are

15    two independent grounds by which the agency can -- on which the

16    agency can rest its decision, either one of which is sufficient

17    on its own, and that one of those is the one claimed by the

18    agency here, that I ought to view that as a post hoc

19    rationalization that doesn't match the record here.  It doesn't

20    adequately take into account what the record shows about what

21    the agency actually did, and that the record shows what the

22    agency actually did is to first decide that there is -- that

23    the species is either -- well, I'll just say endangered, and

24    then to go on to reach its decision on whether this was a

25    significant portion of the range.

And what happened after that is one of two things:  either an inadequate statement of this independent ground of finding not in danger, or a post hoc rationalization, which going on to find nonsignificance is really just meant to -- excuse me, to find threatened only is meant to buttress a weak finding, made weak by an improper draft rule on the significance question.

I fundamentally agree with that argument by plaintiff here.  I agree that the record does not really adequately support the idea that this finding of being threatened only is what the agency intended to do all along without -- well, I agree that it's a post hoc rationalization for what really happened here, and that while the agency certainly, like any other agency, is free to change its mind between a draft analysis and a final analysis, there are several points along the way that suggest that that's not a correct explanation of what happened here.

I suppose, more fundamentally, I agree that the agency's explanation for how it reached this final point is murky enough, unclear on this record enough to make it inadequate to be supportable under the Endangered Species Act, and so I remand for further analysis on both prongs; that is, an analysis of the significance of the portion of the range without reliance on the draft rule, and an analysis -- or at least a clearer explanation of what the agency is relying on in

1    determining that the species is only threatened.  And that

2    requires me -- or allows me not to reach the other question, so

3    I won't do so.

4            Then as to Rule 4(d), I agree fundamentally with the

5    agency's argument that this is really an unusual situation in

6    which industrial and agriculture activity create an inadvertent

7    habitat for the species, and really almost turning on its head

8    in some ways what would be the typical analysis here.

9            And it's true, it's axiomatic as a matter of

10   economics that if you, as a farmer in the Willamette Valley,

11   can grow grapes or grass and you make grass more expensive to

12   grow, there will be some shift to grapes, but here on this

13   record, we don't know much about that.  We -- that's a

14   generalizable proposition, but dependent on transactional costs

15   and the inelasticity of demand that we don't know about here.

16   There is a requisite factual undertaking to say how much cost

17   in the face of how much demand will really drive growers out of

18   grass into something else.  And there's not enough to go on

19   here to know that.

20           But it's sensible enough as an overall proposition,

21   and the situation is unusual enough -- that is, that we require

22   this agricultural activity to keep going in order to create the

23   habitat, that I'm going to not vacate the 4(d) rule in this

24   place with regard to agriculture.  It's not challenged on any

25   of the other exceptions, and therefore leave it in place until

```
1    the reanalysis takes place. which I will then invite the
2    parties to submit within one week's time a schedule going
3    forward that would allow that situation to stay in place for
4    the minimum reasonable period possible, in light of the fact
5    that the status of the species could theoretically change from
6    threatened to endangered during the reanalysis.
7              Anything further from plaintiff today?
8              MR. GLITZENSTEIN:  No, Your Honor.
9              Just so I understand, you are intending -- so we will
10   have a discussion about a schedule and hopefully come up with
11   some agreement with that.  We'll endeavor to do that.
12             You remanding the 4(d) rule as well as the listing
13   decision?
14             THE COURT:  Yes.
15             MR. GLITZENSTEIN:  Thank you, Your Honor.
16             THE COURT:  And you'll do your best to come up with a
17   proposed schedule, but if you don't agree, then just submit
18   your disagreeing proposals.
19             MR. GLITZENSTEIN:  Yes, Your Honor.  Is there a time
20   frame within which you'd like us to do that?
21             THE COURT:  I said in one week from today.
22             MR. GLITZENSTEIN:  I'm sorry.  Thank you, Your Honor.
23             THE COURT:  For defendants, anything further?
24             MR. YANG:  Nothing, Your Honor.
25             THE COURT:  For intervenors?
```

1          MS. LOBDELL:  We'll take your hint, Your Honor.

2          THE COURT:  Pardon me?

3          MS. LOBDELL:  We'll take your hint, Your Honor.

4     Nothing further.

5          THE COURT:  Thank you.  We'll be in recess.

6          THE CLERK:  Court is in recess.

7          (Proceedings concluded at 2:16 p.m.)

--o0o--


        I certify, by signing below, that the foregoing is a
correct transcript of the record of proceedings in the
above-entitled cause.  A transcript without an original
signature or conformed signature is not certified.


/s/Bonita J. Shumway                    July 9, 2019
_____               _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter

MR. BRUNER: [1] 3/16
MR. GLITZENSTEIN: [36] 3/7 3/12 10/3 10/7 11/6 14/11 14/17 15/3 16/4 16/16 16/23 17/5 18/21 19/17 20/25 22/4 34/8 35/19 35/24 36/5 36/15 37/9 39/3 39/9 39/12 39/17 39/25 40/16 40/19 41/12 41/25 42/24 46/7 46/14 46/18 46/21
MR. KERIN: [1] 38/19
MR. YANG: [31] 3/14 22/7 22/13 22/22 22/24 23/24 24/12 24/15 25/10 26/6 26/8 26/16 26/18 27/9 27/14 27/23 28/3 28/13 28/20 28/24 29/17 29/23 30/9 30/11 30/16 31/21 32/15 32/20 33/11 40/23 46/23
MS. LOBDELL: [3] 3/19 46/25 47/2
THE CLERK: [2] 3/2 47/5
THE COURT: [71]

**-**
--o0o [1] 48/2

**/**
/s/Bonita [1] 48/9

**0**
00632 [1] 32/6

**1**
10 [2] 1/6 3/2

100 percent [1] 16/22
1000 [1] 2/21
120 [1] 20/8
140 [1] 20/8
15585 [2] 34/16 34/20
18 [5] 8/25 9/2 9/3 9/18 26/3
18-month [2] 29/17 32/13
1:09 [1] 3/2

**2**
200 [1] 35/14
20004 [1] 2/10
20016 [1] 2/5
2008 [1] 29/1
2012 [3] 29/1 30/19 30/22
2014 [1] 23/9
2019 [3] 1/6 3/2 48/9
210 [1] 2/5
25 [1] 18/4
26117 [1] 26/24
26118 [1] 26/25
2:16 [1] 47/7

**3**
300 [2] 18/1 35/14
301 [1] 2/21
326-8188 [1] 2/22
327 [1] 2/14
3:18-cv-00359-MO [1] 1/4
3:18-cv-359-MO [1] 3/4

**4**
40 percent [5] 17/24 18/2 20/10 28/8 35/13
4115 [1] 2/5

**5**
503 [1] 2/22
5703029 [1] 23/9

586 [1] 34/16
592 [1] 20/6

**6**
601 [2] 2/9 20/11
615 [1] 20/23
623 [1] 21/5
631 [3] 11/18 13/3 13/3
632 [1] 11/19

**8**
8188 [1] 2/22

**9**
9220 [1] 2/14
97204 [1] 2/21
97219 [1] 2/14

**A**
Aaron [2] 2/12 3/17
able [3] 9/3 22/21 31/24
about [36] 5/5 6/18 8/5 8/11 8/15 8/25 12/6 15/1 17/21 17/24 18/1 18/2 18/3 18/9 19/16 20/3 20/8 20/9 20/12 27/5 31/1 31/5 32/14 34/25 35/23 36/4 37/12 38/18 38/22 39/23 42/15 43/8 43/20 45/13 45/15 46/10
above [2] 42/23 48/6
above-entitled [1] 48/6
absolutely [1] 16/8
abstract [2] 5/22 21/18
abundance [1] 24/8
academic [2] 11/10 13/15
accept [2] 6/15 10/25
according [1] 18/4
account [3] 5/13 28/2 43/20

Case 3:18-cv-00359-MO Document 46 Filed 07/18/19 Page 50 of 70

**accurate [3]** 21/21 22/4 28/9

**acknowledge [1]** 42/12

**acknowledgment [1]** 26/20

**acquire [1]** 29/20

**acquired [3]** 30/15 32/13 32/14

**acquiring [1]** 30/6

**acronym [1]** 13/15

**act [7]** 7/5 15/8 39/14 40/12 41/19 42/7 44/21

**action [1]** 34/5

**actions [1]** 43/3

**activities [1]** 41/6

**activity [2]** 45/6 45/22

**actual [2]** 4/15 9/25

**actually [17]** 9/23 11/14 11/16 11/17 15/1 15/20 17/6 21/18 22/20 23/21 25/21 27/1 36/18 41/8 41/18 43/21 43/22

**add [1]** 26/2

**addition [1]** 17/7

**additional [3]** 26/22 30/22 32/4

**address [2]** 25/2 34/5

**addressed [1]** 24/9

**adds [1]** 42/11

**adequate [1]** 16/14

**adequately [4]** 8/1 21/25 43/20 44/9

**administrative [6]** 11/18 13/18 19/24 20/23 34/16 38/5

**admit [1]** 19/25

**adopted [1]** 40/6

**advance [1]** 36/13

**advocacy [1]** 36/12

**after [8]** 27/22 30/1 30/3 30/9 31/23 32/7 36/21 44/1

**afternoon [5]** 3/8 3/15 3/17 3/20 22/8

**again [16]** 4/18 7/15 17/1 17/25 20/7 24/7 25/1 27/11 28/15 29/5 29/25 34/4 36/19 40/9 41/10 42/7

**agencies [5]** 13/17 13/18 14/3 14/11 15/2

**agency [68]**

**agency's [15]** 8/13 15/15 16/9 17/3 17/11 22/1 27/18 29/6 29/9 38/8 38/13 41/3 43/3 44/19 45/5

**ago [3]** 5/10 14/24 17/5

**agree [13]** 7/14 7/16 11/1 16/13 16/17 26/5 26/9 44/8 44/9 44/12 44/18 45/4 46/17

**agreement [1]** 46/11

**agricultural [3]** 39/24 41/6 45/22

**agriculture [2]** 45/6 45/24

**ahead [2]** 22/20 22/24

**al [2]** 1/7 3/6

**all [22]** 3/22 4/23 5/1 6/20 10/7 10/14 11/2 22/21 30/4 31/8 31/16 32/14 33/2 34/6 36/2 36/4 37/24 38/1 40/10 40/15 40/18 44/11

**allow [2]** 40/12 46/3

**allows [1]** 45/2

**allusion [1]** 12/13

**almost [3]** 6/11 24/4 45/7

**along [2]** 44/11 44/15

**already [3]** 18/17 24/10

**also [18]** 2/16 10/19 11/25 12/20 14/8 19/19 23/10 23/12 24/17 24/18 24/20 25/5 37/9 37/18 39/5 41/10 41/20 42/7

**altered [2]** 9/4 9/8

**alternative [3]** 10/13 10/19 12/11

**am [1]** 14/13

**among [2]** 9/7 13/12

**analogous [3]** 12/18 13/21 14/20

**analogy [3]** 16/25 22/25 23/2

**analysis [65]**

**analytical [1]** 19/5

**analytically [1]** 8/7

**analyze [2]** 33/10 39/9

**analyzed [3]** 5/23 13/1 26/1

**analyzing [1]** 11/5

**animals [1]** 35/14

**another [5]** 12/11 17/17 24/24 33/5 38/23

**answer [4]** 4/14 5/8 8/13 8/23

**answered [1]** 8/11

**answering [2]** 6/6 14/15

**answers [1]** 38/18

**ante [1]** 39/1

**anticipate [1]** 20/14

**any [8]** 13/13 16/19 21/6 22/4 30/9 34/7 44/13 45/24

**anything [6]** 17/10 22/17 32/10 36/13 46/7 46/23

**anyway [1]** 31/6

**apologize [1]** 37/11

# A

**appear [1]** 20/9
**APPEARANCES [1]**
2/2
**appears [2]** 15/12
26/24
**application [1]** 23/10
**applies [2]** 18/16 40/8
**apply [3]** 14/22 19/5
38/14
**applying [3]** 17/20
18/24 19/8
**appreciate [6]** 10/9
14/18 14/25 16/24
16/25 42/21
**approach [9]** 17/14
23/3 23/5 23/6 23/14
31/6 33/8 33/15 33/19
**appropriate [1]** 25/6
**appropriately [1]** 17/23
**AR [1]** 20/6
**AR-592 [1]** 20/6
**arbitrary [3]** 5/5 43/4
43/10
**are [40]** 4/5 4/20 5/3
8/24 13/6 16/18 17/2
17/7 17/15 17/17 17/18
19/7 19/19 20/2 20/3
20/8 23/1 24/22 25/7
25/16 26/18 31/10
31/18 31/19 32/13 33/2
34/15 34/18 34/22 35/3
35/11 36/14 40/11
40/12 41/15 43/2 43/3
43/14 44/15 46/9
**argued [1]** 29/8
**arguing [1]** 25/5
**argument [55]**
**arguments [11]** 4/5
4/11 4/25 5/1 10/18
13/12 18/5 21/12 25/24

**art [1]** 7/4
**articulated [2]** 10/13
11/9
**as [77]**
**aside [1]** 34/12
**ask [6]** 14/12 14/16
19/19 22/20 37/8 37/25
**asked [2]** 30/22 32/24
**asking [4]** 15/1 37/9
38/4 39/19
**assimilate [1]** 32/11
**assume [3]** 23/19
38/22 40/21
**at [56]**
**attach [1]** 26/11
**author [1]** 27/20
**available [2]** 5/17 5/25
**Ave [1]** 2/21
**avenue [2]** 2/5 11/6
**aware [5]** 28/14 29/3
29/19 32/4 40/15
**away [1]** 39/11
**axiomatic [1]** 45/9

# B

**back [5]** 4/18 15/22
16/1 35/15 35/16
**bad [1]** 31/7
**Barbur [1]** 2/14
**bark [1]** 32/22
**barred [1]** 33/17
**based [5]** 14/10 17/3
23/20 25/1 37/1
**baseline [3]** 40/2 40/4
40/9
**basic [1]** 37/12
**basically [3]** 13/2
17/21 42/17
**basis [5]** 12/11 16/9
16/15 21/10 41/17
**basketball [1]** 16/24

**be [62]**
**bearing [2]** 38/6 38/13
**became [2]** 9/12 32/4
**because [18]** 4/19 8/7
10/15 12/3 12/7 13/21
14/2 14/16 14/22 19/9
19/21 24/10 25/7 31/7
31/15 34/3 39/6 42/7
**become [3]** 18/4 21/5
24/23
**becomes [2]** 23/20
37/2
**been [6]** 7/6 16/7 17/25
33/13 40/6 43/4
**before [15]** 1/17 4/3
10/20 10/23 12/9 15/18
23/4 24/17 26/12 27/10
28/16 28/23 34/7 36/20
39/16
**began [1]** 39/17
**behalf [1]** 3/9
**behave [1]** 15/2
**being [12]** 3/22 8/3
8/14 18/14 27/13 27/22
30/24 32/14 37/11 39/6
39/24 44/10
**belabor [1]** 21/2
**believe [17]** 10/18
11/14 18/9 19/5 20/21
21/2 21/6 24/7 24/18
24/24 25/20 30/1 38/14
40/17 40/24 41/20 42/6
**below [1]** 48/4
**belt [6]** 23/6 23/14 31/6
33/7 33/15 33/19
**belt-and-suspenders**
**[6]** 23/6 23/14 31/6
33/7 33/15 33/19
**benefit [2]** 41/7 41/11
**best [6]** 5/17 5/22 5/24
5/25 11/16 46/16

## B

**better [7]** 5/19 22/21 32/14 32/19 37/17 37/25 42/6
**between [6]** 9/17 26/3 29/12 31/1 32/18 44/14
**BIOLOGICAL [5]** 1/3 3/5 3/11 4/1 23/8
**birds [3]** 18/1 27/2 35/13
**bit [4]** 6/23 33/13 35/16 43/13
**blueprint [1]** 10/9
**Blvd [1]** 2/14
**body [1]** 38/5
**bona [1]** 31/21
**Bonita [3]** 2/20 48/9 48/10
**both [8]** 16/4 23/16 23/18 23/19 34/5 34/22 35/19 44/22
**bother [1]** 13/23
**bottleneck [1]** 35/1
**box [1]** 15/16
**breeding [1]** 20/8
**brief [4]** 19/21 23/8 31/18 34/7
**briefed [1]** 15/1
**briefing [8]** 3/23 8/4 8/13 23/7 24/18 41/5 42/15 42/22
**briefs [2]** 12/14 41/16
**broken [2]** 17/16 17/21
**Bruner [2]** 2/12 3/18
**burden [1]** 15/11
**but [51]**
**buttress [1]** 44/5

## C

**call [2]** 4/6 6/19
**called [1]** 12/12

**came [6]** 9/15 24/15 25/25 26/13 31/20 32/19
**Camfield [1]** 31/25
**can [19]** 3/7 9/10 9/12 17/15 18/8 18/21 19/7 22/16 23/1 34/22 35/18 35/21 35/22 36/11 38/2 38/17 43/15 43/16 45/11
**can't [1]** 4/9
**cannot [1]** 38/10
**capricious [3]** 5/6 43/4 43/10
**careful [2]** 6/1 25/13
**Caroline [2]** 2/13 3/18
**case [21]** 1/4 3/4 3/23 7/22 12/16 14/19 15/8 15/17 15/20 16/4 17/2 23/7 23/10 23/11 33/18 35/24 36/24 37/4 38/25 40/23 42/22
**cases [6]** 7/14 13/18 15/6 16/6 16/8 42/23
**cast [2]** 19/23 24/22
**cause [1]** 48/6
**caution [3]** 24/8 25/2 34/4
**caveat [1]** 27/16
**caveats [2]** 26/11 26/12
**CBD [2]** 4/6 10/3
**CENTER [6]** 1/3 2/13 3/4 3/11 3/25 23/8
**centers [1]** 29/2
**century [1]** 25/16
**certain [2]** 27/1 40/13
**certainly [12]** 7/25 16/5 21/3 22/23 23/4 24/16 25/8 26/9 33/13 33/16 39/5 44/13
**certified [1]** 48/7

**certify [1]** 48/4
**chair [1]** 10/7
**challenged [2]** 39/23 45/24
**chance [3]** 16/11 29/25 31/19
**change [4]** 29/22 31/21 44/14 46/5
**changed [5]** 9/2 9/14 26/3 29/12 32/17
**characterization [1]** 21/3
**characterize [2]** 18/13 19/22
**chase [1]** 7/8
**chicks [1]** 35/2
**CHIEF [1]** 1/18
**chopped [1]** 4/15
**chronology [4]** 30/18 30/21 34/3 34/12
**circuit [6]** 7/7 7/13 15/8 16/7 16/13 37/7
**citation [1]** 23/9
**citations [1]** 23/23
**cite [4]** 9/4 14/1 15/6 34/21
**cited [4]** 23/7 35/6 35/10 35/12
**cites [1]** 21/20
**citing [1]** 18/6
**claim [3]** 8/19 8/21 37/15
**claimed [1]** 43/17
**claims [1]** 43/3
**clear [5]** 16/8 18/7 20/3 30/21 37/3
**clearer [2]** 32/19 44/25
**clearly [7]** 18/8 19/6 19/13 27/19 38/5 38/12 42/5
**client [2]** 23/22 25/5
**close [2]** 9/24 19/6

**C**

**co [1]**  3/19
**co-counsel [1]**  3/19
**coast [1]**  20/7
**coherent [1]**  37/5
**colleague [1]**  38/8
**collect [1]**  28/6
**collected [1]**  30/3
**Columbia [2]**  7/23 20/7
**come [8]**  9/3 11/2
11/16 30/18 32/24
39/15 46/10 46/16
**comes [4]**  9/24 26/5
31/13 31/14
**commended [1]**  42/24
**comment [1]**  20/11
**comments [4]**  30/19
34/14 34/15 35/3
**common [1]**  31/2
**compels [3]**  24/1 24/21
25/21
**completely [1]**  13/13
**component [1]**  12/15
**concentrated [3]**  17/17
17/19 18/19
**conclude [5]**  14/11
15/14 18/15 36/22
38/11
**concluded [3]**  9/20
20/18 47/7
**conclusion [12]**  9/3
11/2 11/16 16/20 18/7
21/8 24/1 24/21 24/25
25/21 36/25 37/22
**condition [3]**  34/19
40/2 40/4
**conditions [2]**  26/23
40/9
**confessed [1]**  15/11
**confidently [1]**  38/11
**conformed [1]**  48/7

**conservation [2]**  41/7
41/11
**consider [3]**  13/7 18/1
20/13
**considered [3]**  18/18
20/15 29/4
**consistent [4]**  4/13
35/9 36/18 37/4
**constitute [2]**  20/16
20/18
**constructed [1]**  11/15
**contend [2]**  28/1 33/4
**contingent [1]**  39/6
**continue [3]**  25/15
30/17 39/20
**continued [1]**  23/13
**contrary [1]**  41/19
**contrast [1]**  13/8
**core [2]**  7/8 7/20
**corollary [1]**  26/1
**correct [12]**  11/7 22/5
26/17 27/24 28/8 28/21
35/19 36/4 36/7 39/10
44/16 48/5
**correctly [3]**  6/11 27/8
28/5
**cost [1]**  45/16
**costs [1]**  45/14
**could [16]**  11/8 12/3
13/14 13/24 15/18 16/6
19/20 20/3 21/5 23/16
23/19 33/13 33/15
37/13 37/19 46/5
**counsel [10]**  3/7 3/10
3/16 3/18 3/19 19/22
22/10 35/9 36/17 36/20
**counsels [1]**  39/5
**countervailing [1]**  32/5
**couple [4]**  4/5 11/8
33/2 34/11
**course [3]**  34/5 37/18
42/6

**court [17]**  1/1 1/18 2/20
7/13 10/20 10/23 11/18
14/13 15/13 21/9 37/19
38/2 38/4 38/10 42/3
47/6 48/11
**Court's [1]**  10/11
**Courthouse [1]**  2/20
**courts [3]**  7/7 11/1 12/2
**cover [1]**  31/20
**create [2]**  45/6 45/22
**creativity [1]**  36/17
**critical [3]**  12/4 17/11
40/24
**criticism [2]**  7/7 7/8
**CRR [2]**  2/20 48/10
**crucial [2]**  17/1 36/24
**crux [1]**  24/20
**crystalline [2]**  33/14
38/9
**CSR [2]**  2/20 48/10
**curious [1]**  14/10
**current [1]**  26/23
**custom [1]**  23/18
**cutting [1]**  7/8
**cv [2]**  1/4 3/4

**D**

**D.C [2]**  2/5 2/10
**Damon [1]**  27/2
**danger [18]**  4/22 4/24
4/24 6/21 6/22 6/25
7/24 8/2 8/8 8/11 8/20
8/22 9/23 18/24 19/3
19/12 20/13 44/3
**data [23]**  4/17 5/18
5/19 5/19 5/22 5/23
5/24 6/1 6/10 6/13 18/5
26/21 28/25 29/1 29/3
30/4 30/23 31/11 31/12
32/4 32/13 32/14 32/20
**DATE [1]**  48/10
**dealt [1]**  12/17

**decide [6]** 8/1 16/4 17/18 19/11 36/11 43/22

**decided [3]** 13/2 14/22 36/10

**decision [36]** 4/20 11/12 11/24 11/24 12/5 13/19 15/9 15/13 15/15 16/4 16/10 16/13 16/15 16/19 17/12 19/20 21/8 21/22 24/25 31/4 31/5 31/8 35/18 37/6 37/16 38/7 38/13 41/1 42/4 42/16 42/18 43/9 43/10 43/16 43/24 46/13

**decision-making [3]** 15/9 21/22 38/13

**decline [6]** 4/16 9/5 9/8 27/4 28/8 35/13

**declined [2]** 27/1 33/8

**declines [2]** 17/24 18/3

**declining [2]** 4/13 20/9

**deeper [3]** 32/1 32/8 32/19

**defendant [2]** 2/12 3/18

**defendants [3]** 1/8 2/8 46/23

**defending [1]** 12/2

**define [1]** 7/6

**defined [1]** 7/4

**defining [1]** 17/14

**definition [2]** 10/25 11/11

**delve [1]** 38/1

**demand [2]** 45/15 45/17

**demonstrate [1]** 41/5

**demonstrated [1]** 29/21

**demonstrates [1]** 6/12

**DEPARTMENT [4]** 1/6 2/8 3/5 34/13

**dependent [1]** 45/14

**depends [3]** 22/1 27/21 43/13

**depicted [1]** 37/21

**describing [1]** 18/9

**description [4]** 4/12 4/15 9/22 25/9

**determination [4]** 6/12 13/10 21/4 39/7

**determine [3]** 19/9 21/9 21/16

**determined [8]** 7/22 8/1 8/7 13/5 18/17 18/25 21/15 34/4

**determining [5]** 6/16 7/3 7/17 20/4 45/1

**development [1]** 33/24

**did [32]** 5/10 8/10 8/21 11/23 14/16 21/16 21/18 21/22 23/6 23/18 23/21 23/22 23/23 25/5 25/6 26/15 28/14 28/22 29/20 30/2 30/8 31/6 32/1 32/1 32/18 32/23 32/24 33/16 34/25 36/18 43/21 43/22

**didn't [6]** 6/7 13/23 29/21 30/18 31/17 32/22

**different [7]** 9/3 12/20 26/10 30/4 33/16 37/11 39/9

**differently [9]** 9/15 24/15 25/25 26/6 26/14 31/13 31/15 31/20 39/9

**difficult [2]** 11/15 15/13

**digest [1]** 29/25

**diligence [1]** 28/13

**dire [4]** 17/23 18/10

**directly [2]** 12/8 13/21

**director [1]** 3/10

**disagreeing [1]** 46/18

**discount [1]** 6/13

**discounted [2]** 6/4 6/17

**discredited [1]** 19/8

**discrete [5]** 12/23 13/2 13/4 13/6 13/22

**discreteness [2]** 12/21 23/12

**discretion [3]** 42/2 42/5 42/13

**discussed [2]** 8/3 21/13

**discussing [2]** 27/16 36/21

**discussion [8]** 11/20 12/10 12/11 17/9 35/11 38/9 42/15 46/10

**dispositive [1]** 12/4

**dispute [3]** 24/20 33/12 33/14

**distinct [4]** 12/12 12/17 12/25 20/16

**district [7]** 1/1 1/2 1/18 2/20 7/7 7/13 11/1

**dive [3]** 32/1 32/8 32/19

**DIVERSITY [5]** 1/3 3/5 3/11 4/1 23/8

**do [45]** 4/2 7/14 8/10 8/10 9/17 9/24 10/11 11/17 13/17 13/19 14/11 15/2 15/3 15/4 16/6 16/10 20/12 20/21 21/2 21/20 22/17 22/22 23/16 23/18 23/19 24/9 24/14 26/5 27/12 28/13 28/18 28/22 29/4 32/7 33/8 36/23 38/4 38/23

**D**

do... [7]  42/5 42/14
44/11 45/3 46/11 46/16
46/20
document [1]  37/16
does [14]  5/6 7/25
10/17 20/18 20/19
26/10 31/2 38/23 38/23
38/24 39/2 39/15 42/10
44/9
doesn't [11]  8/6 8/7
9/23 14/23 21/25 22/3
31/7 35/23 40/10 43/19
43/19
dog [2]  32/22 32/23
doing [2]  33/17 33/21
don't [27]  4/8 10/18
13/22 14/5 14/11 14/12
14/16 14/21 15/2 16/12
16/15 16/23 21/1 22/17
23/17 29/10 30/12 32/9
35/19 36/5 36/6 36/18
37/14 37/15 45/13
45/15 46/17
done [2]  3/25 36/13
down [4]  17/16 17/21
18/21 29/10
DPS [10]  13/1 13/4
13/5 20/19 22/9 22/11
22/11 23/10 33/16
33/20
Dr. [3]  6/1 26/25 28/5
Dr. Pearson [2]  26/25
28/5
Dr. Sauer [1]  6/1
draft [47]  7/10 7/17
8/18 8/25 9/9 9/11 9/13
9/17 9/19 10/25 19/17
19/18 24/15 25/3 25/25
26/4 26/5 26/9 26/15
26/20 27/9 27/10 27/12

27/13 27/16 27/22 28/1
28/3 28/6 28/11 28/23
29/5 29/12 29/18 29/22
30/9 31/1 31/7 31/12
31/23 32/18 33/24
34/14 35/12 44/6 44/14
44/24
drafted [2]  7/5 29/19
drive [2]  34/22 45/17
driven [1]  8/17
due [1]  28/13
dump [1]  27/20
during [4]  32/25 33/23
41/9 46/6

**E**

economics [1]  45/10
effect [1]  41/1
effort [3]  19/22 19/23
27/19
either [4]  35/21 43/16
43/23 44/2
eliminate [1]  7/10
else [4]  9/17 28/9 38/25
45/18
email [12]  26/24 27/7
27/13 27/19 27/25
28/12 28/14 28/18
28/24 29/15 30/2 34/11
employed [1]  6/6
encapsulate [3]  27/17
29/6 29/9
end [2]  10/2 33/15
endangered [21]  4/21
7/5 9/23 10/1 10/14
15/7 20/2 20/22 21/4
22/2 25/7 25/10 36/23
36/25 37/21 40/5 40/11
42/18 43/23 44/21 46/6
endangerment [1]  7/21
endeavor [1]  46/11
engage [2]  14/4 33/7

enough [6]  7/14/16 44/20
44/20 45/18 45/20
45/21
ensuing [1]  13/8
entire [3]  12/15 18/23
19/11
entirely [1]  12/23
entirety [3]  17/9 20/13
24/5
entitled [2]  29/9 48/6
environmental [1]
42/23
ergo [1]  27/11
Eric [2]  2/4 3/8
error [10]  12/1 15/6
15/9 15/11 15/16 15/21
15/22 16/2 16/7 38/3
ESA [2]  4/20 39/18
especially [2]  42/2
42/17
essentially [1]  42/10
establishing [1]  15/12
et [2]  1/7 3/6
Eubanks [1]  2/4
even [11]  4/8 12/10
13/22 15/25 16/12
18/25 21/25 22/3 33/8
34/11 39/17
events [1]  5/7
ever [2]  22/3 29/8
every [1]  30/25
everything [1]  38/25
exactly [1]  36/16
examine [2]  30/15
30/25
examined [2]  28/25
29/1
example [8]  20/6 22/10
23/7 24/3 25/13 28/10
34/20 40/14
examples [1]  16/6
except [2]  39/1 40/6

**E**

**exceptions [1]** 45/25
**exchanges [1]** 37/3
**excuse [2]** 43/11 44/5
**exemption [2]** 39/24
41/5
**exercise [2]** 11/10
13/16
**existing [2]** 41/14
42/11
**expecting [1]** 19/7
**expensive [1]** 45/11
**experience [3]** 14/7
14/8 14/9
**explain [6]** 6/6 9/10
17/13 25/14 31/23
37/16
**explains [1]** 8/20
**explanation [7]** 4/15
6/3 37/6 37/25 44/16
44/19 44/25
**extend [1]** 23/2
**extensive [1]** 31/24
**extinct [1]** 24/23
**extinction [18]** 4/22
4/24 6/22 6/25 7/24 8/3
8/8 8/11 8/20 8/22 9/24
18/24 19/4 19/11 20/5
20/14 25/15 34/23
**extirpated [2]** 18/4
21/5

**F**

**face [2]** 37/21 45/17
**faced [2]** 20/4 21/13
**faces [1]** 14/2
**facing [2]** 25/7 35/1
**fact [23]** 6/2 6/9 14/5
18/3 23/3 23/13 24/25
25/5 25/6 26/21 28/7
28/9 31/4 31/6 31/12
34/18 35/10 43/9 46/4
**factual [5]** 21/17 23/20
33/3 33/3 45/16
**failure [1]** 5/17
**fair [1]** 19/21
**fairly [1]** 9/12
**fall [2]** 15/22 16/1
**familiar [1]** 20/25
**fan [1]** 16/25
**far [2]** 16/16 23/1
**farmer [1]** 45/10
**fashion [2]** 17/16 23/4
**fashion-forward [1]**
23/4
**fast [1]** 42/4
**father [1]** 16/21
**favor [3]** 24/24 36/10
39/5
**felt [2]** 28/12 28/18
**fide [1]** 31/21
**figuring [1]** 30/7
**final [30]** 9/1 9/14 9/18
9/20 9/22 9/25 11/12
11/23 19/20 20/1 20/6
20/23 21/3 21/8 24/4
24/12 25/25 26/4 26/6
26/14 28/23 29/12 31/1
32/18 33/25 35/7 35/10
41/3 44/15 44/19
**find [5]** 6/12 8/21 8/22
44/4 44/5
**finding [22]** 8/19 10/1
23/11 23/12 24/10
24/21 25/6 25/22 27/17
28/6 29/5 29/19 31/24
33/11 35/21 35/22 36/3
37/15 41/14 44/3 44/6
44/10
**findings [1]** 36/14
**first [21]** 4/6 4/11 4/25
5/3 5/14 7/12 8/6 8/21

**first [21]** 8/6 8/22 12/12 12/23 13/19
13/24 18/3 35/10 10/2 10/12 14/4 17/21
22/9 26/5 30/8 36/2
36/2 36/10 38/22 43/4
43/22
**Fish [9]** 5/9 5/10 5/20
5/22 7/19 7/21 8/23
34/13 40/3
**fix [1]** 22/16
**flawed [2]** 11/1 11/5
**Floor [1]** 2/9
**focus [1]** 24/2
**focused [1]** 24/5
**focuses [3]** 4/11 5/18
6/20
**focusing [2]** 4/17 7/13
**follow [1]** 9/16
**follow-on [1]** 9/16
**following [2]** 28/23
37/7
**foregoing [1]** 48/4
**foreseeable [1]** 24/23
**Forest [2]** 5/6 5/9
**forgive [1]** 30/19
**form [3]** 37/13 38/23
39/2
**formal [1]** 35/3
**forward [4]** 23/4 24/22
25/17 46/3
**forward-looking [2]**
24/22 25/17
**found [5]** 12/2 16/2
16/7 42/8 42/8
**four [2]** 21/20 23/22
**frame [1]** 46/20
**framework [1]** 3/24
**free [1]** 44/14
**full [2]** 30/2 30/6
**fully [2]** 29/4 29/25
**fundamental [1]** 17/2
**fundamentally [3]** 44/8
44/18 45/4
**furnished [1]** 9/9

**F**

**further [8]** 6/8 14/22 37/19 38/15 44/22 46/7 46/23 47/4
**furthermore [1]** 20/19
**future [3]** 21/6 24/23 25/18

**G**

**gather [1]** 30/9
**gathering [1]** 30/8
**general [2]** 15/14 40/2
**generalizable [1]** 45/14
**generally [3]** 13/17 16/7 42/24
**genetic [1]** 35/1
**genetically [1]** 12/25
**geographically [1]** 12/25
**get [11]** 4/3 9/6 12/10 15/23 16/11 16/13 26/12 27/12 27/16 31/16 38/17
**gets [3]** 6/23 10/2 40/5
**Gifford [3]** 15/7 37/6 38/2
**give [5]** 7/9 11/8 31/19 36/2 36/17
**given [2]** 7/10 31/16
**giving [1]** 23/15
**Glitzenstein [3]** 2/4 2/4 3/9
**go [11]** 8/9 8/21 10/12 14/16 16/15 18/11 22/20 22/24 37/19 43/24 45/18
**goal [2]** 36/12 36/12
**goes [3]** 12/8 26/10 39/11
**going [13]** 4/2 4/19 10/6 11/23 14/9 16/12

45/22 45/23 46/2
**gone [1]** 33/10
**Good [5]** 3/8 3/15 3/17 3/20 22/8
**got [2]** 5/21 16/1
**government [9]** 3/16 18/5 19/21 19/22 35/9 36/17 36/20 37/14 38/4
**grapes [2]** 45/11 45/12
**grappling [1]** 34/1
**grass [3]** 45/11 45/11 45/18
**Grayland [1]** 27/3
**Greenwald [2]** 2/16 3/10
**ground [2]** 16/14 44/3
**grounds [3]** 16/19 35/17 43/15
**grow [2]** 45/11 45/12
**growers [1]** 45/17
**guess [6]** 8/5 14/15 14/19 16/21 21/25 37/10
**gunning [1]** 15/21

**H**

**habitat [3]** 41/6 45/7 45/23
**had [13]** 9/13 24/10 28/12 28/18 29/4 29/24 30/3 30/3 30/15 32/7 34/17 38/6 38/12
**hadn't [2]** 28/12 29/3
**half [1]** 5/14
**hand [1]** 37/14
**hang [1]** 22/17
**happened [5]** 31/12 33/5 44/1 44/13 44/17
**happening [1]** 36/15
**happens [1]** 40/22
**hard [5]** 5/10 6/10 6/16

**harmless [6]** 12/1 15/6 15/16 15/21 16/7 38/3
**has [29]** 5/1 5/1 5/21 6/1 6/24 7/6 10/20 12/21 12/22 13/19 15/8 15/9 15/11 16/3 16/7 17/25 22/10 23/3 26/25 29/8 30/25 33/19 35/17 36/20 37/23 38/15 40/6 42/1 42/5
**have [47]** 8/9 9/6 9/17 9/21 11/2 12/2 12/11 12/23 13/5 13/20 13/20 13/22 14/7 14/16 14/20 14/22 14/22 14/23 15/10 15/12 15/23 16/7 17/13 17/21 18/14 19/18 21/16 23/7 29/10 29/13 29/22 30/2 33/10 33/13 33/15 36/3 36/12 36/12 37/3 39/2 39/8 39/9 40/25 41/24 42/12 43/4 46/10
**haven't [1]** 15/24
**Having [1]** 18/17
**head [1]** 45/7
**hear [5]** 6/18 7/15 16/21 22/21 40/18
**heard [1]** 23/22
**hearing [1]** 8/15
**heavy [1]** 15/11
**helpful [7]** 3/22 14/1 14/25 14/25 15/5 42/22 43/1
**helps [2]** 12/9 15/17
**Herculean [1]** 19/23
**here [42]** 3/22 5/13 5/17 5/21 5/25 6/8 6/23 7/8 8/4 8/5 12/3 13/20 14/20 15/10 16/18 17/1 22/1 23/6 23/19 23/21

**here... [22]** 23/22 23/24 31/3 33/5 33/11 33/25 36/1 36/15 37/2 37/9 42/24 43/1 43/9 43/18 43/19 44/9 44/13 44/17 45/8 45/12 45/15 45/19
**highlight [1]** 11/21
**highlights [1]** 38/10
**hint [2]** 47/1 47/3
**his [1]** 27/2
**hoc [7]** 19/25 27/11 27/12 36/14 43/18 44/3 44/12
**hold [1]** 7/15
**holds [1]** 7/25
**Honor [71]**
**Honor's [2]** 11/23 21/2
**HONORABLE [1]** 1/17
**hope [1]** 37/3
**hopefully [1]** 46/10
**horned [2]** 13/6 18/18
**how [14]** 5/11 8/14 9/10 9/24 11/14 12/17 13/1 15/3 23/1 27/12 33/4 44/19 45/16 45/17
**however [1]** 18/12
**Hubert [2]** 2/8 3/15
**hypothetical [1]** 42/3
**hypothetically [1]** 12/23

**I**

**I'd [4]** 3/23 14/16 19/22 23/1
**I'll [13]** 3/25 4/2 4/5 4/6 6/19 6/22 7/15 8/15 9/9 9/21 10/3 11/17 43/23
**I'm [24]** 3/25 4/2 5/11 6/14 8/14 13/12 14/15 14/25 18/22 20/25

22/12 22/14 28/4 30/20 30/21 31/16 31/18 31/23 32/6 32/12 37/8 40/15 45/23 46/22
**I've [1]** 5/3
**i.e [1]** 19/13
**idea [14]** 5/5 5/16 9/13 9/19 10/25 14/3 21/13 24/14 31/19 32/10 33/5 36/3 36/13 44/10
**if [70]**
**ignore [1]** 12/3
**illegal [1]** 38/12
**imminent [4]** 5/11 5/12 20/4 25/16
**impact [1]** 39/3
**imperiled [1]** 33/1
**importance [2]** 12/4 34/21
**important [2]** 34/3 34/12
**impossible [2]** 16/15 17/10
**improper [2]** 7/17 44/6
**improved [1]** 34/17
**improving [1]** 35/8
**in [211]**
**in-circuit [1]** 7/13
**inadequate [4]** 41/15 42/9 44/2 44/21
**inadvertent [1]** 45/6
**inartfully [1]** 31/23
**include [3]** 11/23 13/14 13/19
**included [2]** 9/13 30/19
**including [1]** 7/7
**inconsistencies [2]** 4/9 5/4
**incorrect [1]** 35/22
**increased [1]** 27/1
**indefinitely [1]** 42/17
**independent [10]**

15/25 16/3 16/9 16/14 16/19 31/8 35/17 36/14 43/15 44/2
**indicate [1]** 31/11
**indicates [1]** 26/1
**industrial [1]** 45/6
**inelasticity [1]** 45/15
**information [19]** 9/11 9/14 27/13 27/22 28/2 28/7 29/25 30/3 30/3 30/6 30/7 30/9 30/22 31/25 32/2 32/8 32/12 32/24 32/24
**informational [1]** 9/2
**insofar [1]** 26/10
**instance [1]** 34/2
**instead [2]** 4/21 7/20
**instructed [1]** 15/8
**intended [1]** 44/11
**intending [1]** 46/9
**interested [1]** 8/15
**interesting [1]** 12/6
**interim [7]** 29/14 31/15 31/17 39/12 39/12 39/13 41/25
**INTERIOR [3]** 1/7 3/5 4/14
**interpretation [2]** 10/21 12/9
**interregnum [1]** 29/17
**INTERVENOR [1]** 2/12
**intervenors [2]** 3/18 46/25
**into [8]** 5/12 28/2 32/1 32/8 38/1 39/15 43/20 45/18
**introduce [1]** 3/7
**invite [1]** 46/1
**invocation [1]** 38/12
**invoke [1]** 38/3
**involved [1]** 23/10
**involves [1]** 21/20

Case 3:18-cv-00359-MO    Document 146    Filed 07/18/19    Page 59 of 70

**I**

**irrelevant [1]** 15/15
**is [204]**
**islands [1]** 20/8
**isn't [7]** 5/21 9/20
15/20 22/16 33/4 33/9
37/9
**issue [9]** 10/12 10/16
10/17 12/18 13/1 13/9
15/23 28/5 38/15
**issued [5]** 26/15 27/8
27/25 28/11 29/22
**issues [2]** 10/23 34/2
**it [121]**
**it's [29]** 4/16 4/22 4/23
5/5 5/8 5/12 6/9 7/9
14/7 15/13 16/13 16/15
18/7 19/6 19/21 20/3
23/23 27/1 29/16 32/13
34/12 36/18 37/22
41/23 44/12 45/9 45/9
45/20 45/24
**it: [1]** 6/24
**it: is [1]** 6/24
**its [26]** 6/23 10/14 15/9
15/13 17/9 18/18 18/19
19/21 20/13 20/15
25/25 26/2 28/11 28/13
28/19 29/23 30/16
32/19 33/14 37/21 43/8
43/16 43/17 43/24
44/14 45/7
**itself [8]** 4/7 7/11 10/21
14/21 19/20 21/9 27/19
33/22

**J**

**Jewell [1]** 23/9
**JUDGE [1]** 1/18
**judicial [1]** 14/13
**July [1]** 48/9

**June [2]** 1/6 3/2
**just [39]** 4/9 5/4 6/22
8/14 9/16 10/7 12/7
13/3 13/18 13/24 14/9
15/2 15/23 18/6 19/13
19/20 22/17 22/20
23/19 26/2 27/3 29/5
30/17 30/20 32/12
32/22 34/11 35/15
35/16 35/19 39/22
39/23 41/23 41/24
42/23 43/23 44/4 46/9
46/17
**Justice [1]** 2/8
**justifies [1]** 9/18
**justify [1]** 9/24

**K**

**keep [1]** 45/22
**keeping [1]** 41/17
**kept [1]** 42/17
**Kerin [1]** 38/17
**kind [2]** 15/9 18/15
**kinds [1]** 37/11
**knew [2]** 28/12 28/18
**knock [1]** 29/10
**know [11]** 14/5 15/3
23/17 25/13 26/15
30/12 30/12 38/17
45/13 45/15 45/19
**knowledge [4]** 27/18
29/7 29/9 29/21
**knowledge at [1]** 29/7
**known [2]** 9/11 9/12
**knows [1]** 5/12

**L**

**laid [2]** 10/15 43/2
**landscape [4]** 9/1 9/2
26/3 32/17
**language [8]** 9/25
19/16 19/24 23/25

**large [1]** 29/2
**larger [1]** 19/1
**lark [5]** 18/18 20/15
20/16 41/6 42/16
**larks [2]** 13/6 20/8
**last [1]** 36/19
**later [5]** 9/4 9/12 9/18
31/20 36/13
**law [5]** 13/18 15/17
19/25 34/2 37/4
**lay [3]** 3/23 4/2 17/13
**Leadbetter [1]** 27/3
**learned [8]** 9/14 26/14
27/22 29/13 29/16
31/15 31/17 32/11
**least [8]** 8/19 14/2
23/16 33/20 37/5 37/9
42/15 44/25
**leave [2]** 41/2 45/25
**leaves [1]** 11/5
**leaving [1]** 24/17
**left [2]** 11/3 43/7
**legal [2]** 2/13 10/17
**lend [1]** 10/21
**let [8]** 3/24 22/20 23/15
32/21 35/15 35/16 37/8
38/17
**let's [7]** 10/24 22/16
23/19 27/7 28/16 38/21
39/23
**level [1]** 6/15
**levels [1]** 40/13
**light [1]** 46/4
**like [5]** 3/23 25/9 28/12
44/13 46/20
**likely [4]** 18/4 19/2
24/23 25/14
**limitations [1]** 23/1
**limited [2]** 14/7 14/8
**line [1]** 22/1
**linguistic [2]** 5/4 19/6

**L**

**list [3]**  4/20 29/13 36/23
**listed [5]**  21/10 36/25 37/23 39/20 41/16
**listing [13]**  4/3 4/6 10/19 12/12 12/14 12/22 39/19 40/25 41/9 41/20 42/8 42/18 46/12
**litigation [1]**  39/17
**little [3]**  6/23 7/8 43/13
**LLP [1]**  2/4
**Lobdell [2]**  2/13 3/19
**long [1]**  4/16
**long-term [1]**  4/16
**look [25]**  4/19 5/11 6/1 6/3 6/5 6/9 6/10 6/16 6/18 11/14 12/7 12/17 12/24 13/1 13/3 13/22 15/14 17/14 17/16 19/19 24/3 34/15 35/3 35/6 36/19
**looking [4]**  13/18 24/22 25/17 32/6
**looks [1]**  12/20
**loss [1]**  18/25
**lost [1]**  18/23
**low [1]**  35/1
**lower [1]**  7/23

**M**

**made [17]**  4/5 11/9 15/9 23/11 23/12 24/10 24/18 24/21 24/25 31/4 33/10 33/11 36/3 37/15 41/14 43/10 44/6
**main [1]**  30/14
**make [23]**  6/14 7/17 7/25 8/6 8/7 10/22 13/20 14/19 16/2 16/12 21/11 21/24 24/14

24/25 25/4 26/13 30/21 31/4 35/18 35/21 35/22 44/20 45/11
**makes [3]**  14/5 18/5 23/18
**making [8]**  13/12 13/13 15/9 15/13 21/12 21/22 37/6 38/13
**many [1]**  37/20
**Marine [1]**  2/9
**match [1]**  43/19
**matter [9]**  8/2 10/20 15/14 21/17 31/7 35/23 36/5 36/6 45/9
**may [15]**  10/21 10/22 10/22 13/17 14/6 18/19 20/16 22/9 23/4 24/16 25/12 26/19 26/22 27/2 28/9
**maybe [1]**  21/20
**me [20]**  3/9 7/12 9/10 14/2 14/16 16/22 22/20 23/15 30/20 31/18 31/19 32/21 35/15 35/16 37/8 43/11 44/5 45/2 45/2 47/2
**mean [10]**  4/8 14/6 14/10 15/20 21/1 32/9 32/18 39/15 40/10 42/21
**meaning [1]**  7/9
**meaningful [1]**  22/4
**means [1]**  32/20
**meant [6]**  27/6 27/17 29/5 29/6 44/4 44/5
**mechanisms [2]**  40/11 41/21
**mentioned [1]**  17/4
**method [4]**  5/24 6/16 7/17 11/4
**methods [1]**  6/5
**Meyer [1]**  2/4

**MICHAEL [1]**  1/17
**microphone [2]**  3/12 22/15
**Midway [1]**  27/3
**Midway/Grayland [1]**  27/3
**might [3]**  7/2 21/9 32/4
**mind [4]**  7/19 29/23 31/21 44/14
**minimum [1]**  46/4
**minute [2]**  28/16 35/15
**minutes [1]**  38/19
**missed [1]**  16/22
**mistake [1]**  38/5
**misunderstanding [1]**  30/20
**MO [2]**  1/4 3/4
**moment [7]**  5/10 13/25 14/24 17/4 22/13 29/4 40/21
**monitoring [1]**  29/1
**month [9]**  9/9 27/8 27/10 27/12 28/1 28/5 29/17 30/1 32/13
**months [5]**  8/25 9/2 9/3 9/18 26/3
**more [17]**  6/18 8/15 8/17 9/14 10/17 10/20 17/17 18/14 28/19 31/24 33/1 33/13 37/5 38/1 38/18 44/18 45/11
**MOSMAN [1]**  1/17
**most [4]**  17/1 23/4 34/5 40/8
**move [3]**  15/19 28/17 34/7
**moved [2]**  15/24 22/15
**movement [2]**  27/2 28/10
**Mr [4]**  2/4 2/8 2/12 2/16
**Mr. [1]**  38/17
**Mr. Kerin [1]**  38/17

Case 3:18-cv-00359-MO    Document 46    Filed 07/18/19    Page 61 of 70

**M**

**Ms [1]** 2/13
**much [6]** 33/23 34/6 40/19 45/13 45/16 45/17
**murky [1]** 44/20
**must [1]** 13/4
**my [8]** 3/23 4/2 4/13 7/15 15/3 16/21 17/9 38/8

**N**

**N.W [2]** 2/5 2/9
**nature [1]** 8/5
**near [2]** 4/16 21/6
**near-term [1]** 4/16
**necessarily [3]** 38/23 40/10 41/24
**necessary [3]** 11/24 21/7 39/3
**need [7]** 7/10 8/9 15/22 22/17 35/19 35/19 36/23
**negative [2]** 23/11 23/12
**negatively [1]** 4/8
**net [1]** 41/7
**new [7]** 27/13 27/21 28/2 29/16 30/9 42/4 42/16
**newly [1]** 32/13
**next [4]** 5/16 15/24 15/25 34/24
**Ninth [5]** 7/7 15/8 16/7 16/13 37/6
**no [25]** 1/4 3/4 6/9 8/2 8/8 8/9 13/2 13/5 14/16 16/11 20/1 29/8 32/13 33/12 33/14 34/16 35/7 37/4 38/6 38/12 38/25 39/23 39/23 41/18 46/8

**Noah [2]** 2/16 3/10
**non [3]** 5/11 5/12 15/22
**non-error [1]** 15/22
**non-imminent [2]** 5/11 5/12
**nonetheless [1]** 12/3
**nonscientific [1]** 14/7
**nonsignificance [1]** 44/4
**norm [1]** 42/23
**normal [2]** 19/5 39/14
**normally [2]** 6/4 40/4
**not [85]**
**note [1]** 13/3
**nothing [8]** 13/19 16/1 23/5 39/1 39/12 42/11 46/24 47/4
**notice [1]** 14/13
**notion [2]** 13/13 24/8
**Notwithstanding [1]** 23/13
**now [5]** 19/8 21/14 31/18 37/15 40/2
**number [2]** 5/14 29/11

**O**

**o0o [1]** 48/2
**observe [1]** 13/17
**obviously [2]** 37/13 38/1
**occur [1]** 25/16
**occurred [1]** 37/3
**occurring [1]** 8/25
**October [2]** 30/18 30/22
**October of [1]** 30/22
**ODFW [2]** 4/17 29/1
**offhand [1]** 30/12
**Official [1]** 48/11
**oh [1]** 18/6
**on [105]**
**one [54]**

**ones [1]** 40/12
**only [15]** 9/12 11/3 11/5 13/16 21/15 21/15 25/14 35/7 36/4 38/2 39/23 42/13 44/5 44/10 45/1
**open [1]** 11/6
**opponent [1]** 11/3
**opportunity [3]** 28/13 32/7 33/7
**opposite [2]** 15/20 25/12
**or [42]** 2/14 2/21 4/24 5/24 5/25 6/7 6/20 6/22 8/19 9/23 10/22 11/24 12/4 12/15 12/25 13/3 13/15 14/6 14/6 15/6 17/15 17/16 20/17 21/9 21/10 21/20 23/18 23/22 28/8 28/9 33/3 35/18 35/22 38/3 38/6 38/23 42/15 44/3 44/24 45/2 45/11 48/7
**oral [7]** 1/15 3/4 3/24 6/18 7/15 8/15 43/1
**order [2]** 40/12 45/22
**OREGON [4]** 1/2 1/8 19/2 42/9
**original [1]** 48/6
**other [24]** 4/23 5/5 6/5 6/16 10/22 11/1 12/2 13/12 14/6 17/10 18/8 19/19 21/9 21/20 28/10 30/6 33/3 37/2 39/24 40/11 41/21 44/14 45/2 45/25
**others [3]** 9/7 17/7 27/1
**otherwise [1]** 16/14
**ought [1]** 43/18
**our [15]** 6/24 9/18 12/4 13/4 16/19 23/7 23/8 24/18 25/18 33/15 36/7

**O**

our... [4] 41/4 41/8 41/13 41/16

out [32] 3/23 4/2 7/15 8/4 9/15 10/15 17/17 17/22 18/15 24/8 24/15 24/17 25/25 26/5 26/13 26/25 28/7 28/19 28/23 29/15 30/7 30/18 31/13 31/14 31/20 33/18 34/4 34/13 36/9 41/16 43/2 45/17

outcome [3] 26/10 38/13 42/19

outset [2] 42/21 43/2

over [3] 17/24 34/23 35/13

overall [1] 45/20

own [4] 4/13 14/9 26/2 43/17

**P**

p.m [2] 3/2 47/7

page [6] 13/3 20/11 20/23 21/4 23/8 34/24

pages [1] 11/18

paragraph [2] 18/16 36/19

Pardon [1] 47/2

parlance [1] 19/25

part [11] 4/24 6/7 6/25 6/25 11/11 13/15 17/11 17/17 17/17 17/18 36/24

particular [6] 9/4 14/19 14/21 17/2 24/19 33/23

particularly [3] 4/17 7/12 15/7

parties [3] 10/10 38/17 46/2

parts [2] 8/6 18/8

parts: [1] 8/24

parts: one [1] 8/24

pathways [1] 4/20

pause [4] 13/24 15/18 22/12 22/19

Pearson [7] 26/19 26/21 26/25 28/5 31/25 34/13 35/4

Pearson's [1] 26/20

pending [1] 41/2

per [1] 20/10

percent [6] 16/22 17/24 18/2 20/10 28/8 35/13

perhaps [3] 4/8 31/22 32/3

perilously [1] 9/24

period [5] 17/24 32/11 32/13 35/13 46/4

periods [1] 34/23

permission [1] 10/11

persist [1] 19/2

persistence [2] 19/10 20/14

persuasive [2] 8/14 33/9

pertinent [1] 6/6

pick [1] 33/5

piece [2] 14/1 30/1

pieces [2] 4/4 4/19

Pinchot [3] 15/7 37/6 38/2

place [10] 3/3 20/1 39/16 41/9 41/10 41/18 45/24 45/25 46/1 46/3

places [2] 18/1 20/3

plain [3] 23/25 24/19 25/20

plaintiff [11] 1/4 2/4 3/9 4/22 5/18 6/8 8/6 10/15 43/14 44/8 46/7

plaintiff's [2] 7/3 43/8

plaintiffs [5] 8/18 8/21

play [1] 39/15

played [1] 36/9

podium [2] 10/5 10/6

point [31] 7/14 8/18 9/6 9/21 11/21 11/23 12/6 13/12 14/5 14/19 15/5 17/1 18/6 21/2 21/16 22/9 23/15 24/17 24/17 24/24 27/16 27/18 30/1 31/3 31/12 33/9 34/7 34/12 35/16 37/2 44/19

pointed [2] 22/10 33/18

points [10] 26/25 29/3 30/4 30/24 31/11 32/4 32/13 34/11 36/17 44/15

policy [13] 13/4 22/10 22/11 22/11 23/10 33/18 33/20 33/22 33/23 33/24 33/25 34/2 34/14

population [24] 4/12 5/7 6/16 12/12 12/18 12/22 13/2 13/4 13/7 19/1 19/10 20/12 20/16 20/17 20/19 21/5 25/14 26/25 27/3 29/2 33/1 35/2 35/14 37/21

populations [7] 13/6 18/14 19/1 20/9 34/21 34/23 35/1

portion [39] 6/23 7/1 7/22 8/3 10/12 10/16 11/13 11/19 12/10 12/19 12/22 12/24 13/9 13/11 17/8 17/19 17/22 17/25 18/2 18/11 18/12 18/19 18/23 19/12 19/13 20/2 20/4 20/17 20/18 20/20 20/21 21/6 35/11 36/7 37/1 43/5

# P

**portion... [3]** 43/12 43/25 44/23

**portions [4]** 17/15 19/20 20/15 36/22

**Portland [3]** 1/8 2/14 2/21

**portrayal [1]** 21/22

**position [2]** 32/15 41/3

**positions [1]** 10/10

**possibility [1]** 15/21

**possible [2]** 42/19 46/4

**post [6]** 19/25 27/11 36/14 43/18 44/3 44/12

**postdating [1]** 27/13

**potential [1]** 18/25

**potentially [1]** 12/14

**practice [1]** 23/18

**precedent [2]** 15/5 33/20

**precludes [1]** 23/5

**predate [1]** 28/14

**predated [1]** 29/18

**predicate [1]** 8/11

**predicted [2]** 9/5 9/8

**prefer [1]** 10/11

**preference [1]** 10/4

**prejudicial [3]** 15/6 15/16 38/3

**present [2]** 2/16 25/18

**presented [1]** 33/6

**presently [1]** 19/3

**pretty [1]** 42/4

**previously [1]** 32/14

**primarily [1]** 25/1

**prior [7]** 8/25 9/9 26/20 27/8 27/12 28/1 28/5

**probably [1]** 14/8

**problem [2]** 14/2 34/25

**problems [1]** 17/3

**procedure [1]** 38/6

**proceedings [4]** 1/16 22/19 47/7 48/5

**process [5]** 15/10 21/23 30/8 32/25 38/13

**prohibited [1]** 40/11

**prohibition [1]** 40/6

**prong [13]** 6/19 6/20 10/13 10/19 24/2 24/3 24/5 24/7 24/9 24/11 25/1 25/2 25/8

**prongs [3]** 6/24 16/3 44/22

**proportion [1]** 12/20

**proposals [1]** 46/18

**proposed [5]** 30/18 32/7 32/23 34/25 46/17

**proposition [4]** 10/24 15/17 45/14 45/20

**propter [1]** 27/11

**protect [2]** 41/15 42/9

**protection [2]** 39/18 41/18

**protections [7]** 39/14 39/22 39/24 40/5 41/15 42/9 42/11

**provided [1]** 5/13

**provides [1]** 41/7

**providing [1]** 41/10

**prudent [2]** 34/5 41/8

**punch [1]** 22/1

**punts [1]** 7/20

**purpose [1]** 41/10

**purposes [4]** 11/18 23/16 41/19 42/6

**put [4]** 11/11 12/1 15/16 42/3

**putting [1]** 34/12

# Q

**qualifies [1]** 28/2

**qualify [1]** 13/5

**quantum [2]** 30/2 30/6

**question [21]** 6/6 7/12 7/20 7/21 8/9 8/11 9/16 9/21 14/15 15/3 23/2 23/20 25/3 26/8 27/5 30/20 32/3 36/10 40/21 44/7 45/2

**questions [2]** 9/7 38/18

**quo [1]** 39/1

**quote [1]** 38/5

**quoted [1]** 36/20

# R

**raise [2]** 10/17 12/7

**raised [3]** 4/14 22/10 28/5

**range [37]** 4/23 4/25 5/1 6/20 6/21 6/23 7/1 7/23 8/3 10/12 10/14 10/16 11/13 11/20 12/10 12/19 12/22 12/24 13/9 13/11 17/9 17/15 17/22 18/2 18/18 18/20 20/15 20/17 20/20 36/22 37/1 43/5 43/6 43/8 43/12 43/25 44/23

**rarely [1]** 13/18

**rate [3]** 9/5 9/8 28/8

**rather [6]** 17/23 18/9 20/2 25/16 25/18 27/18

**rational [2]** 4/7 6/7

**rationale [4]** 4/7 7/13 12/13 12/22

**rationalization [5]** 19/25 36/15 43/19 44/3 44/12

**rationally [1]** 6/17

**raw [2]** 27/20 30/1

**reach [3]** 10/22 43/24 45/2

**reached [3]** 14/23 38/7 44/19

**reaching [1]** 16/3
**read [2]** 17/8 17/10
**reading [4]** 18/21 24/1 24/19 25/20
**real [1]** 23/20
**really [24]** 6/24 9/16 12/4 17/10 21/12 21/14 21/25 22/3 22/3 24/20 26/1 27/19 29/5 33/5 36/5 36/15 38/25 43/2 44/4 44/9 44/12 45/5 45/7 45/17
**reanalysis [3]** 35/9 46/1 46/6
**reason [2]** 26/13 36/8
**reasonable [2]** 4/10 46/4
**reasonably [1]** 19/7
**reasoning [4]** 5/13 7/14 7/16 33/14
**reasons [3]** 11/8 21/17 33/3
**recap [1]** 21/11
**recapitulation [1]** 10/10
**received [1]** 30/2
**recess [2]** 47/5 47/6
**recharacterization [1]** 11/25
**recite [1]** 25/6
**recognize [1]** 10/19
**recognizes [1]** 10/16
**record [37]** 3/7 5/25 6/24 8/5 8/17 8/24 9/10 9/19 11/18 14/1 16/8 16/18 17/3 18/8 18/9 20/23 21/20 21/21 21/24 22/3 23/17 23/21 23/23 28/22 29/21 34/16 37/20 38/1 38/10

38/14 43/19 43/20 43/21 44/9 44/20 45/13 48/5
**record-based [1]** 17/3
**redone [2]** 38/24 38/25
**reduced [2]** 17/25 35/14
**refer [3]** 18/8 21/5 26/19
**reference [1]** 35/7
**referred [2]** 17/23 18/13
**referring [2]** 8/24 25/17
**reflect [2]** 27/2 28/9
**reflects [1]** 16/18
**refute [1]** 12/9
**regard [4]** 4/6 22/25 33/17 45/24
**regarding [2]** 25/3 43/10
**regards [3]** 22/9 23/2 33/22
**related [1]** 33/6
**relating [1]** 11/12
**relative [1]** 36/21
**relevant [1]** 11/24
**relevantly [1]** 19/1
**reliance [1]** 44/24
**relied [5]** 5/19 5/24 5/24 15/12 31/7
**relief [1]** 37/12
**rely [2]** 6/7 41/21
**relying [2]** 32/10 44/25
**remain [1]** 41/10
**remains [1]** 41/9
**remand [13]** 37/5 37/12 37/13 37/16 37/18 38/15 38/22 39/2 41/3 41/9 42/2 42/13 44/22
**remanded [3]** 39/19 40/22 41/1
**remanding [2]** 39/5

46/12
**remands [3]** 37/11 37/24 37/25
**remember [2]** 5/21 27/8
**reminding [1]** 16/22
**render [1]** 19/10
**reply [3]** 19/21 23/8 34/7
**REPORTER [2]** 2/20 48/11
**represent [1]** 20/20
**representative [1]** 26/22
**request [1]** 30/19
**requested [1]** 40/25
**require [2]** 38/24 45/21
**required [1]** 24/9
**requirement [2]** 6/4 12/21
**requires [2]** 28/6 45/2
**requiring [1]** 10/1
**requisite [1]** 45/16
**Resources [2]** 2/9 2/13
**respect [1]** 10/13
**respectfully [1]** 38/11
**respond [2]** 4/1 26/3
**responded [1]** 36/20
**response [8]** 20/11 22/7 23/24 31/10 31/14 32/23 41/12 41/13
**rest [1]** 43/16
**rests [1]** 14/3
**return [2]** 39/1 40/8
**review [2]** 31/25 32/25
**revisit [2]** 41/23 41/24
**revisiting [2]** 41/20 41/20
**right [32]** 11/2 11/4 11/6 14/24 16/11 16/16 17/5 19/17 22/4 26/16 27/23 28/20 28/21

**R**

**right... [19]** 29/16 29/17 30/16 30/23 30/25 32/9 32/15 33/2 34/6 35/18 35/23 35/24 36/5 38/22 39/1 39/17 40/1 40/2 40/15

**risk [8]** 7/1 11/4 19/11 20/4 25/15 25/18 25/19 43/11

**River [1]** 20/7
**RMR [2]** 2/20 48/10
**role [1]** 14/21
**Room [1]** 2/21
**Roughly [1]** 27/10
**rule [49]**
**ruling [1]** 10/21

**S**

**S.W [2]** 2/14 2/21
**said [19]** 4/9 5/3 5/9 9/19 12/8 13/2 13/21 14/21 14/24 20/1 27/19 29/11 37/7 37/8 38/2 38/8 42/21 43/3 46/21
**sake [1]** 36/2
**same [6]** 5/16 9/21 26/24 35/11 40/8 40/21
**sample [1]** 14/8
**satisfy [1]** 6/4
**Sauer [1]** 6/1
**say [25]** 4/6 4/19 6/22 9/9 10/17 12/24 13/3 14/10 14/16 15/25 18/12 18/17 19/7 19/22 20/7 20/12 28/19 30/14 32/17 34/18 34/20 36/11 38/9 43/23 45/16
**saying [12]** 6/2 14/14 18/7 19/6 19/14 22/2 22/2 22/4 31/3 33/17

**saying is [1]** 14/14
**says [8]** 6/9 7/21 8/6 16/18 19/24 21/14 30/7 36/21
**Schapaugh [1]** 32/1
**schedule [4]** 42/16 46/2 46/10 46/17
**science [3]** 3/10 5/17 5/25
**scientific [1]** 6/5
**Scott [1]** 26/20
**seat [1]** 22/21
**seated [1]** 10/7
**second [10]** 4/18 6/20 8/17 9/16 14/4 15/25 17/8 21/24 22/18 24/9
**Secondly [1]** 35/6
**section [2]** 2/9 10/2
**see [4]** 22/16 24/4 33/25 37/15
**seems [1]** 24/20
**segment [4]** 12/12 12/18 13/7 20/17
**semantic [1]** 4/8
**sense [5]** 5/22 8/6 8/7 16/2 24/22
**sensible [1]** 45/20
**sentence [2]** 24/19 25/21
**sentences [3]** 24/6 24/7 25/9
**separate [5]** 4/4 4/25 17/15 42/14 42/15
**seriatim [1]** 18/15
**service [17]** 5/6 5/9 5/9 5/10 5/20 5/23 7/22 23/3 23/11 24/8 25/13 28/6 29/18 30/21 31/24 32/4 33/19
**Service's [2]** 7/19 8/23
**services [2]** 22/11 40/3

**set [5]** 6/4 17/22 18/15 30/23 33/4
**several [5]** 16/18 21/17 25/9 26/11 44/15
**shift [1]** 45/12
**SHL [2]** 26/24 32/6
**SHL-00632 [1]** 32/6
**SHL-26117 [1]** 26/24
**short [3]** 17/24 34/23 35/13
**shorter [1]** 38/18
**shot [1]** 15/23
**shots [1]** 16/22
**should [13]** 4/18 5/23 5/24 6/3 6/3 21/10 24/17 31/1 34/20 36/25 37/5 41/20 42/14
**shouldn't [1]** 15/25
**show [3]** 4/22 21/21 43/14
**showing [1]** 35/12
**shows [4]** 18/9 32/5 43/20 43/21
**Shumway [3]** 2/20 48/9 48/10
**side [1]** 43/7
**signature [2]** 48/7 48/7
**significance [38]** 7/1 7/4 7/6 7/9 7/11 7/18 8/2 8/9 8/22 11/1 11/5 11/11 12/20 13/14 13/22 17/11 17/14 18/16 19/8 19/9 23/13 24/3 24/6 26/2 28/19 28/24 30/16 31/5 33/10 35/18 35/22 35/23 36/5 36/11 38/12 43/11 44/7 44/23
**significant [25]** 4/24 6/22 7/1 10/12 10/16 11/13 11/19 12/10 12/19 12/21 13/4 13/7

**significant... [13]** 13/9 13/11 17/8 17/19 19/12 20/17 20/20 21/16 34/22 37/1 37/22 43/12 43/25

**signing [1]** 48/4

**simply [7]** 11/10 13/15 21/7 21/8 29/7 32/10 40/8

**since [2]** 9/8 13/5

**sincerely [1]** 42/22

**site [1]** 28/10

**sites [2]** 20/9 27/1

**situation [10]** 13/20 13/21 14/20 21/19 34/17 35/8 40/8 45/5 45/21 46/3

**slow [1]** 18/21

**small [3]** 34/21 34/25 35/2

**so [96]**

**some [29]** 4/1 5/22 6/10 6/15 7/6 10/22 12/13 13/19 14/7 14/13 15/9 17/16 18/6 18/19 19/19 20/15 23/1 23/17 26/2 27/5 31/10 33/20 34/1 39/2 42/14 42/14 45/8 45/12 46/11

**somehow [2]** 33/17 34/17

**someone [1]** 6/17

**something [11]** 5/8 6/2 8/5 12/8 13/16 28/1 28/9 28/19 29/16 43/13 45/18

**sometimes [1]** 32/22

**somewhat [3]** 4/15 12/18 12/19

**sorry [4]** 18/22 22/14

**sort [16]** 3/24 5/14 7/5 9/5 11/21 11/25 14/12 21/18 23/3 23/17 25/17 27/11 36/10 40/3 42/23 43/7

**sound [1]** 25/9

**southern [1]** 7/23

**speak [2]** 10/4 25/18

**special [1]** 40/6

**species [31]** 6/21 6/25 7/5 7/24 10/14 12/15 12/15 15/7 18/3 19/11 19/12 21/10 21/15 25/7 25/10 37/23 39/20 40/4 40/5 40/9 40/12 41/16 41/17 41/18 42/8 42/10 43/23 44/21 45/1 45/7 46/5

**specific [2]** 13/10 39/22

**specifically [6]** 11/12 11/22 20/11 30/13 38/8 41/14

**spell [1]** 41/16

**SPR [8]** 13/15 24/1 24/4 32/5 33/18 33/22 35/11 36/6

**stability [1]** 4/16

**stable [2]** 4/12 18/14

**standard [1]** 38/14

**standing [1]** 31/8

**standpoint [3]** 18/13 39/14 42/6

**stands [1]** 13/8

**stark [1]** 13/8

**start [7]** 3/25 10/3 10/11 10/24 11/2 23/15 27/7

**state [4]** 18/10 42/9 42/11 42/17

**statement [1]** 44/2

**STATES [4]** 1/1 1/18 2/20 3/5

**status [24]** 20/12 21/4 24/2 24/5 24/11 25/1 25/2 25/8 25/22 26/8 31/4 31/8 31/13 33/11 35/18 35/23 36/3 36/10 36/21 39/1 39/9 43/11 43/11 46/5

**statute [1]** 7/11

**statutory [3]** 5/14 6/19 10/21

**stay [2]** 10/7 46/3

**step [7]** 6/8 14/4 14/4 14/22 15/24 15/25 15/25

**stick [1]** 28/16

**still [2]** 4/10 23/13

**stochastic [2]** 5/7 34/21

**stop [1]** 8/12

**straightforward [2]** 10/17 10/20

**streaked [2]** 13/6 18/17

**Street [1]** 2/9

**strong [1]** 10/18

**stronger [1]** 43/9

**strongly [1]** 21/3

**studies [6]** 18/6 26/22 35/6 35/10 35/11 35/12

**study [2]** 26/20 26/21

**subject [1]** 7/6

**submit [3]** 38/11 46/2 46/17

**submitted [2]** 34/14 35/4

**subpart [1]** 5/2

**subparts [2]** 5/15 43/5

**subspecies [8]** 12/15 18/24 19/3 20/13 20/21 41/2 41/7 41/11

**substantive [1]** 38/6

**succeeded [1]** 33/24
**successful [1]** 4/21
**such [4]** 9/2 31/4 31/12 32/5
**suffers [1]** 4/7
**sufficient [4]** 16/9 16/20 29/22 43/16
**suggest [10]** 23/1 25/11 26/10 29/24 32/9 32/21 32/25 36/12 37/24 44/16
**suggesting [5]** 11/10 21/4 23/23 35/10 36/8
**suggestion [2]** 21/7 34/17
**suggests [2]** 32/3 34/3
**Suite [2]** 2/5 2/14
**summary [1]** 34/20
**superficial [1]** 6/15
**support [8]** 15/17 16/9 16/20 21/25 22/3 31/19 37/22 44/10
**supportable [2]** 21/8 44/21
**supported [5]** 16/14 19/9 19/24 21/21 37/20
**supporting [1]** 9/25
**supportive [1]** 34/18
**supports [1]** 41/6
**suppose [2]** 33/7 44/18
**sure [6]** 5/11 6/14 8/14 21/11 25/4 30/21
**surfeit [2]** 25/2 34/4
**survey [2]** 5/19 28/25
**survival [1]** 35/1
**suspenders [6]** 23/6 23/14 31/6 33/7 33/15 33/19
**suss [3]** 28/7 28/19 28/23

**table [1]** 3/10
**take [16]** 4/4 5/10 6/5 14/13 16/23 22/21 24/3 32/8 37/13 40/5 40/6 40/10 40/13 43/20 47/1 47/3
**taken [5]** 5/12 23/3 28/2 33/15 33/19
**takes [3]** 6/8 11/4 46/1
**taking [1]** 23/6
**talk [5]** 17/21 18/2 18/3 34/24 39/23
**talked [1]** 5/4
**talking [1]** 17/24
**tantamount [1]** 15/10
**technical [1]** 34/15
**tell [2]** 31/18 31/19
**telling [2]** 26/21 32/22
**ten [1]** 38/18
**tend [1]** 7/16
**tentative [3]** 3/23 4/13 7/16
**term [5]** 4/16 4/16 7/4 7/9 7/10
**terms [8]** 6/2 6/7 7/3 11/22 17/24 24/22 25/17 34/11
**test [6]** 12/1 18/16 18/25 19/8 19/9 38/12
**than [9]** 5/19 17/10 17/17 20/2 25/18 25/25 26/6 33/16 37/19
**Thank [19]** 3/14 3/21 3/22 10/8 22/6 25/23 34/6 34/9 38/16 38/20 40/15 40/16 40/18 40/20 42/20 42/25 46/15 46/22 47/5
**that [414]**
**that's [35]** 4/14 5/13

6/18 9/10 11/7 14/6 17/6 19/13 21/17 21/19 21/21 22/5 24/12 24/24 26/17 27/8 27/24 28/21 29/21 31/2 31/9 31/11 32/15 33/16 36/3 36/4 36/7 36/9 36/16 39/10 40/1 40/15 40/18 44/16 45/13
**the threat [1]** 17/19
**their [6]** 11/11 11/15 11/25 18/7 21/7 34/15
**them [7]** 5/11 11/5 16/4 22/2 29/16 31/1 36/2
**then [43]** 8/8 8/22 9/10 9/21 10/7 10/12 10/24 11/3 11/5 12/20 15/22 16/1 16/20 17/16 17/18 17/20 18/11 18/15 19/16 21/12 22/21 23/20 25/5 27/7 28/7 30/21 35/15 36/4 36/11 37/18 38/14 39/11 39/12 39/22 40/7 40/21 40/22 40/22 41/2 43/24 45/4 46/1 46/17
**theoretical [1]** 13/16
**theoretically [1]** 46/5
**there [44]** 4/5 4/20 5/3 8/2 8/8 8/12 8/18 8/19 10/7 10/18 11/21 13/2 13/24 15/18 17/2 17/7 17/15 20/2 20/8 22/12 22/19 23/1 27/5 29/3 29/11 31/10 32/12 33/2 33/20 34/16 35/7 37/4 37/5 38/15 39/6 40/11 42/14 43/2 43/14 43/22 44/15 45/12 45/16 46/19
**there's [19]** 5/16 8/19 12/13 15/5 19/25 23/5

# T

**there's... [13]** 23/17
26/13 30/5 32/10 33/12
33/14 37/10 37/18
37/24 37/25 38/25 40/2
45/18
**therefore [8]** 19/2
19/11 21/16 36/21
36/22 36/23 41/17
45/25
**these [9]** 4/1 5/3 18/14
20/9 25/16 34/15 36/14
38/18 43/2
**they [60]**
**they'd [1]** 41/24
**they're [7]** 11/10 18/6
18/6 18/8 35/12 35/23
41/19
**they've [1]** 11/9
**thing [2]** 11/3 30/14
**things [12]** 4/9 9/13
26/15 26/18 29/12
29/13 30/5 30/25 31/15
31/17 31/18 34/18
**things: [1]** 44/2
**things: either [1]** 44/2
**think [52]**
**third [4]** 2/9 2/21 9/21
19/16
**this [111]**
**thorny [1]** 34/1
**thorough [2]** 8/14 10/9
**those [11]** 4/4 4/11
4/25 7/2 9/2 26/18
31/18 39/16 40/16 41/5
43/17
**thought [1]** 29/11
**thoughts [3]** 3/24 4/1
4/3
**threat [2]** 5/6 17/19
**threatened [24]** 4/21

**threats [4]** 17/17 18/19
34/22 34/22
**three [2]** 21/20 23/22
**through [3]** 11/19
13/10 34/16
**throughout [6]** 4/23
5/1 6/21 18/18 43/5
43/8
**tight [1]** 22/17
**time [16]** 3/3 9/11
17/25 20/14 27/18 28/6
29/7 29/10 29/19 30/15
32/11 33/23 34/10
35/13 46/2 46/19
**today [4]** 3/25 38/10
46/7 46/21
**too [3]** 6/10 6/17 24/17
**took [5]** 6/9 6/10 6/15
6/17 30/15
**tools [1]** 21/9
**toss [1]** 36/24
**total [1]** 18/1
**totality [4]** 24/6 27/17
29/6 29/9
**towards [1]** 25/15
**track [1]** 42/4
**transactional [1]** 45/14
**transcript [3]** 1/16 48/5
48/6
**transmittal [1]** 27/19
**treat [1]** 5/6
**trending [1]** 25/15
**tricky [1]** 6/23
**tried [1]** 41/4
**true [3]** 14/6 25/12 45/9
**trying [6]** 14/19 31/16

37/24
**turn [2]** 11/4 38/21
**turning [2]** 11/17 45/7
**turns [3]** 7/20 8/4 29/15
**two [30]** 4/4 4/19 4/20
4/25 5/1 5/15 6/24 6/25
7/2 8/6 8/24 9/6 16/3
17/2 17/7 18/1 18/14
21/12 24/6 24/7 26/22
30/5 35/17 36/14 36/22
37/11 43/3 43/5 43/15
44/1
**typical [2]** 35/24 45/8
**typically [3]** 14/3 30/25
35/19

# U

**U.S [2]** 1/6 2/8
**ultimate [1]** 42/18
**ultimately [1]** 41/6
**unclear [2]** 37/12 44/20
**under [5]** 4/20 13/3
22/11 38/2 44/21
**undercuts [1]** 35/4
**undermines [1]** 13/13
**underscores [1]** 24/7
**understand [11]** 5/8
6/11 19/15 21/11 25/4
30/16 30/23 31/22
35/16 37/14 46/9
**understandably [1]**
29/15
**understanding [2]** 28/4
32/20
**understood [1]** 32/14
**undertake [1]** 31/24
**undertaking [1]** 45/16
**underway [1]** 33/24
**UNITED [4]** 1/1 1/18
2/20 3/5
**unlawful [1]** 12/2

**U**

**unless [1]** 12/21
**unlikely [1]** 23/18
**unnecessary [4]** 8/1 10/22 14/5 31/5
**unprotected [1]** 42/17
**until [3]** 29/4 30/18 45/25
**unusual [4]** 30/24 43/14 45/5 45/21
**up [9]** 4/18 7/25 32/25 33/4 33/5 35/15 35/16 46/10 46/16
**upon [6]** 5/19 5/24 15/12 27/21 37/1 39/6
**us [2]** 10/2 46/20
**use [6]** 5/17 5/18 10/6 13/14 21/9 32/11
**used [4]** 9/25 30/24 38/6 40/12
**useful [1]** 11/22
**uses [1]** 40/3
**usually [1]** 40/12
**utter [1]** 9/23

**V**

**vacate [3]** 42/2 42/7 45/23
**vacated [4]** 39/19 40/7 41/23 41/25
**valid [1]** 20/19
**Valley [9]** 4/12 5/7 18/11 18/12 19/2 19/10 29/2 41/15 45/10
**verify [1]** 32/12
**very [13]** 11/15 11/22 29/2 31/2 33/23 34/1 34/6 34/23 35/2 35/13 37/4 37/8 40/19
**view [12]** 4/13 7/16 21/17 21/25 25/18 27/2

43/7 43/18
**viewed [1]** 5/12
**views [1]** 5/11
**voice [1]** 16/21
**void [1]** 38/24
**voided [1]** 39/22

**W**

**waiver [1]** 41/1
**want [7]** 6/18 14/12 25/4 26/13 30/14 30/20 40/18
**wanted [1]** 11/21
**was [57]**
**Washington [25]** 2/5 2/10 7/23 12/24 13/11 17/22 17/25 18/2 19/1 19/13 20/1 20/4 20/7 20/12 20/16 20/18 20/19 20/21 21/6 25/14 33/1 34/13 34/18 34/19 35/8
**wasn't [4]** 9/11 24/9 25/15 27/17
**way [20]** 4/9 6/13 8/21 11/16 12/14 14/6 15/2 16/12 17/13 18/15 19/23 22/4 29/20 30/24 31/4 31/11 32/11 36/9 37/4 44/16
**ways [4]** 6/10 7/2 43/3 45/8
**we [68]**
**We'd [2]** 25/11 26/9
**we'll [8]** 4/4 7/15 22/21 38/18 46/11 47/1 47/3 47/5
**we're [7]** 4/19 12/1 13/13 13/20 25/17 33/17 39/19
**we've [4]** 13/2 24/17

**weak [2]** 44/6 44/6
**weaker [1]** 43/8
**weather [1]** 34/21
**week [1]** 46/21
**week's [1]** 46/2
**weighs [1]** 24/24
**Welcome [1]** 3/12
**well [25]** 6/2 8/6 8/13 12/1 14/10 14/12 15/4 16/5 18/3 19/18 24/16 25/2 26/22 27/15 28/25 30/17 31/10 31/14 32/21 36/1 39/13 39/18 43/23 44/11 46/12
**went [4]** 8/21 13/10 31/5 36/11
**were [13]** 8/14 9/3 18/23 29/3 29/11 35/6 35/12 39/9 39/16 40/7 42/3 42/9 42/13
**Western [1]** 2/13
**Westlaw [1]** 23/9
**what [65]**
**what's [2]** 23/24 36/15
**whatever [2]** 8/3 9/19
**whatsoever [1]** 34/17
**when [10]** 3/25 9/6 26/15 28/11 29/11 29/22 32/17 33/6 38/4 38/25
**where [16]** 11/19 13/9 13/18 13/20 14/20 15/8 15/8 16/6 16/8 17/18 18/8 20/1 20/3 27/15 38/2 40/6
**whether [21]** 5/22 5/23 6/17 6/21 8/1 10/14 13/7 13/10 14/6 17/15 17/16 17/18 18/19 20/15 21/10 23/3 23/17 28/7 28/8 28/9 43/24

# W

**which [51]**
**while [5]**  18/21 26/25
41/19 43/14 44/13
**who [3]**  3/10 5/21 11/2
**whole [2]**  6/7 19/3
**why [12]**  6/3 6/7 8/10
8/10 11/8 11/23 21/17
26/13 33/3 33/3 33/9
36/25
**Wildlife [10]**  2/9 5/9
5/10 5/20 5/23 7/19
7/21 8/23 34/14 40/3
**will [9]**  9/6 13/6 25/1
38/17 38/20 45/12
45/17 46/1 46/9
**Willamette [9]**  4/12 5/7
18/11 18/12 19/2 19/10
29/2 41/15 45/10
**win [1]**  39/2
**Wisconsin [1]**  2/5
**within [6]**  15/16 18/4
24/23 25/16 46/2 46/20
**without [4]**  41/1 44/11
44/24 48/6
**witnessing [1]**  18/13
**won't [1]**  45/3
**words [2]**  9/23 37/20
**worked [1]**  35/4
**working [2]**  22/16
22/16
**world [1]**  16/2
**would [44]**  6/4 7/10
7/17 8/9 8/10 8/10
11/15 12/14 12/23
13/14 14/3 14/11 16/2
16/19 18/24 19/2 19/10
21/19 25/16 26/11
29/24 32/25 34/5 35/8
37/22 38/9 39/8 39/14
39/15 39/20 40/7 40/10
40/25 41/1 41/2 41/8
41/18 41/24 42/7 42/12
42/16 42/19 45/8 46/3
**wouldn't [6]**  8/2 15/2
33/10 41/22 41/23
41/25
**wrinkle [1]**  40/25
**writing [1]**  30/1
**wrong [3]**  15/23 16/4
32/10

# Y

**Yang [2]**  2/8 3/15
**year [1]**  20/10
**years [1]**  18/4
**yes [11]**  3/13 7/16
30/10 32/16 34/9 35/20
35/25 37/10 39/4 46/14
46/19
**yet [2]**  29/4 30/2
**you [125]**
**you'd [5]**  8/12 14/10
29/13 39/8 46/20
**you'll [2]**  24/4 46/16
**you're [14]**  10/6 14/9
15/21 16/1 16/12 18/21
21/12 22/2 25/5 31/3
36/8 37/9 38/22 42/24
**you've [4]**  16/22 22/15
32/11 33/4
**your [120]**
**yourself [1]**  3/7